**IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **REED C. DEMPSEY and** | : | |
| **SHELLEY DEMPSEY,** | : | **Civil Action No. 4:11-cv-1679** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **BUCKNELL UNIVERSITY, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court are two motions to dismiss.  On November 14, 2011, Defendants

Bucknell University, John C. Bravman, Lewis A. Marrara, Daniel C. Remley, Amy A. Badal,

Linda Locher, Kari M. Conrad, Michael Smyer, Chief Jason Friedburg, Officer Julie Holtzapple,

Officer Darrell Fisher, Officer Robert Ulmer, Officer James Middleton, Officer Red Rishel,

Detective Jeffrey Ettinger, and Captain Douglas Lauver (the "Bucknell Defendants"), moved to

dismiss the claims against them in Plaintiffs' complaint.  (Doc. No. 11.)  On the same day,

Defendant Anthony J. Voci, Jr., moved to dismiss the claims against him in Plaintiffs' complaint.

(Doc. No. 12.)  For the reasons that follow, the Court will grant in part both motions and deny in

part both motions.

**I.     BACKGROUND**

On September 6, 2011, Plaintiffs, Reed C. Dempsey and his mother, Shelley Dempsey,

initiated this action by filing an 18-count complaint against 17 defendants.  The 585-paragraph

complaint is based on Defendants' actions in response to an incident involving Plaintiff Reed

and a female Bucknell student, referred to as "K.S."  (Doc. No. 1.)  According to the complaint,[1]

Plaintiff Reed and K.S. engaged in "play-fighting" in Smith Hall (the dormitory where both

students lived) in the early hours of September 5, 2010.  (Id. ¶¶ 23-28.)  Initially, Plaintiff Reed

and K.S. were accompanied by other students; however, the two eventually ended up "play-

wrestling" in Plaintiff Reed's dorm room, alone.  (Id. ¶¶ 29-35.)

 While Plaintiff Reed and K.S. were still play-fighting, K.S. allegedly jumped on top of

Plaintiff Reed, pinned his arms to the side of his head, and began to harass him about having

kissed her roommate earlier that evening.  (Id. ¶¶ 35-37.)  After the two left Plaintiff Reed's

room, K.S. allegedly tried to continue wrestling with Plaintiff Reed, who eventually resorted to

restraining her.  (Id. ¶¶ 37-48.)  After Plaintiff Reed struggled to restrain K.S., the Resident

Advisor ("RA") for Smith Hall came to the hallway.  (Id. ¶ 49.)  The RA noticed red marks on

K.S.'s eye, shoulder, and hand; and when he asked the two what happened, K.S. slapped Plaintiff

Reed in the face.  (Id. ¶¶ 50-51.)  After the RA restrained K.S., he asked Plaintiff Reed to return

to his room, and then escorted K.S. to her room.  (Id. ¶¶ 52-54.)  A few minutes later, when

Plaintiff Reed was using the water fountain, K.S. came out of her room to smack him on his

back, and verbally harassed him before the RA asked her to stop.  (Id. ¶¶ 55-58.)  K.S. then gave

her account of the incident to the RA, stating that Plaintiff Reed had tackled her, that she kicked

Plaintiff Reed in the groin, and that she did not want the RA to file a report because neither of

the students intended for things to get out of hand.  (Id. ¶¶ 59-63.)  Plaintiff Reed then gave his

---

[1] In reviewing the motion to dismiss, the Court will accept Plaintiff's factual allegations as true and will "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

side of the story to the RA.  (Id. ¶¶ 64-65.)

   The next morning, at her field hockey game, K.S.'s coach noticed marks on her face, and asked her about them.  (Id. ¶¶ 70-71.)  After the game, K.S. told her coach and her father that she was assaulted by Plaintiff Reed.  (Id. ¶¶ 72-77.)  Specifically, she told her father that Plaintiff Reed had done "horrible things" to her.  (Id. ¶ 78.)  K.S.'s father documented her injuries with his camera and subsequently contacted the RA about the incident.  (Id. ¶¶ 79-81.)  After K.S. told the RA that he could discuss the incident with her father, or anyone within the Bucknell administration, the RA informed K.S. and her father that he had filed a formal report with the dean of students.  (Id. ¶ 82.)

   On the bus ride home from her field hockey game, K.S. contacted Defendant Badal, the associate dean of students, and told her that she had been sexually assaulted.  (Id. ¶ 84.)  K.S.'s father then contacted Bucknell's Department of Public Safety, and around 6 p.m. on September 5, 2010, K.S. met with Defendants Badal, Holtzapple, Fisher, and Ulmer at the Department of Public Safety.  (Id. ¶¶ 86-87.)  At the meeting, K.S. recounted to the university employees that in the early hours of that morning, Plaintiff Reed picked her up, put her on his futon, pinned her arms, pinched her, punched her in "inappropriate places," tackled her to the ground, dragged her, and struggled with her on the ground.  (Id. ¶¶ 88-101.)  K.S. further stated that "while [Plaintiff Reed] was on top of [her], he was getting off to it."  (Id. ¶ 102.)  In addition to her interview, K.S. provided the Department of Public Safety with a written statement, accusing Plaintiff Reed of pinching, slapping, scratching, and punching her in her chest and groin, despite her demands that he stop.  (Id. ¶¶ 138-142.)  After discussing the incident at the Department of Public Safety, Defendants Holtzapple, Fisher, and Badal accompanied K.S. to Evangelical Hospital, where tests

indicated that she was in good condition. (<u>Id.</u> ¶¶ 111-116.)

Later that evening, Defendant Ulmer contacted Plaintiff Reed, to inform him that he was a suspect in a criminal investigation, and that he was to have no contact with K.S. (<u>Id.</u> ¶¶ 117-119.) Shortly thereafter, Defendant Ulmer contacted Plaintiff Reed again and asked him to come to the Department of Public Safety, where he was read his <u>Miranda</u> rights prior to recounting his version of the incident. (<u>Id.</u> ¶¶ 120-123.) The Department of Public Safety also interviewed a number of students, who corroborated portions of Plaintiff Reed's version of the story, and contradicted some aspects of K.S.'s account. (<u>Id.</u> ¶¶ 125-128.)

On September 6, 2010, Defendants Locher and Badal told Plaintiff Reed that he would have to move to a different dormitory, which he promptly did. (<u>Id.</u> ¶¶ 129-134.) Later that evening, Defendants Locher and Marrara informed Plaintiff Reed that he was being temporarily suspended. (<u>Id.</u> ¶¶ 147-148.) The next day, Defendants Ulmer, Middleton, and Holtzapple filed criminal charges against Plaintiff Reed for simple assault, harassment, and disorderly conduct. (<u>Id.</u> ¶¶ 144-145, 173.) Plaintiff Reed was arraigned that same day at the Union County Courthouse. (<u>Id.</u> ¶ 174.)

On September 9, 2010, Plaintiff Reed's suspension was rescinded, and he returned to campus. (<u>Id.</u> ¶¶ 176-178.) That evening, accompanied by Defendant Voci, K.S. met with Defendant Ettinger at the Department of Public Safety for a second interview regarding the incident. (<u>Id.</u> ¶¶ 196-197.) At the interview, K.S. allegedly exaggerated her previous statements, providing statements that were contradicted by several witnesses. (<u>Id.</u> ¶¶ 198-243.) Shortly thereafter, Defendant Holtzapple and an unknown male officer confronted Plaintiff Reed in his new dorm room, and told him to gather his belongings, and that he was trespassing. (<u>Id.</u> ¶¶ 244-

247.)  The officers took Plaintiff Reed to Hufnagle Park in the back of a Department of Public Safety vehicle, where they left him by himself.  (Id. ¶¶ 248-255.)  Plaintiffs allege that the news of Plaintiff Reed's removal from campus caused Plaintiff Shelley Dempsey to become extremely emotional.  (Id. ¶ 249.)

On September 10, 2010, Defendant Holzapple filed a second criminal complaint against Plaintiff Reed, charging him with false imprisonment, simple assault, indecent assault, disorderly conduct, and harassment.  (Id. ¶ 259.)  Plaintiff Reed was arrested and arraigned that day.  (Id. ¶ 260.)  Following Plaintiff Reed's arrest, K.S. filed student conduct charges against Plaintiff Reed and he filed student conduct charges against her.  (Id. ¶¶ 265-266.)  Thereafter, Plaintiffs allege that Defendant Voci insisted that Plaintiff Reed not be allowed on Bucknell's campus, and told various media outlets that Plaintiff Reed had forced K.S. into his room, got on top of her, and hit her in the breast and groin.  (Id. ¶¶ 275-298.)  Plaintiffs allege that Bucknell representatives also made statements to the media.  (Id. ¶ 299.)

On October 2, 2010, Defendant Voci filed a motion for preliminary injunction with this Court, seeking to enjoin Bucknell from holding a sexual misconduct hearing regarding the incident.  (Id. ¶ 300.)  On October 5, 2010, the Court denied the motion, and the hearing began that evening.  (Id. ¶¶ 301-302.)  The hearing lasted three days, during which several students, Plaintiff Reed, Defendants Holtzapple, and Ulmer testified.  (Id. ¶¶ 303-393.)  K.S. responded to only one question, before withdrawing her answer and reserving her right to remain silent.  (Id. ¶¶ 374-375.)  At the conclusion of the hearing, Plaintiff Reed was found not responsible for sexual misconduct, physical assault, harassment, and freedom of movement, but was found responsible for disorderly conduct.  (Id. ¶¶ 398-399.)  K.S. was also found to be responsible for

5

disorderly conduct.  (Id. ¶ 401.)

On October 14, 2010, Plaintiff Reed appealed the results of the sexual misconduct hearing.  (Id. ¶ 409.)  Plaintiffs allege that an audio recording of the hearing was not produced for the appeal, despite Plaintiff Reed's request.  (Id. ¶ 411.)  Furthermore, the appeal hearing was not recorded, allegedly contrary to various Bucknell policies.  (Id. ¶ 412.)  On October 27, 2010, Plaintiff Reed filed a second appeal, which Defendant Symer denied on December 14, 2010.  (Id. ¶¶ 417-430.)

## II.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum, 361 F.3d at 221 n.3.  The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted).  A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).  While the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket

assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" <u>Phillips</u>, 515 F.3d at 231-32 (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1955 (2009)).

## III.    DISCUSSION

In their complaint, Plaintiffs asserted the following 18 causes of action: (1) a false arrest claim by Plaintiff Reed against Defendants Bucknell, Holtzapple, Ulmer, Middleton, Fisher, Ettinger, and "Officer Doe" (Count I); (2) a malicious prosecution claim against Defendants Bucknell, Holtzapple, Ulmer, Middleton, Fisher, and Ettinger (Count II); (3) a supervisory liability claim by Plaintiff Reed against Defendants Bucknell, Bravman, Locher, Badal, Marrara, Lauver, and Friedberg (Count III); (4) a false imprisonment claim by Plaintiff Reed against Defendants Bucknell, Bravman, Locher, Badal, Marrara, Friedberg, Holtzapple, Doe, Ulmer, Middleton, Fisher, and Ettinger (Count IV); (5) a civil conspiracy to commit false arrest claim by Plaintiff Reed against Defendants Bucknell, Bravman, Locher, Badal, Marrara, Friedberg, Holtzapple, Doe, Ulmer, Middleton, Fisher, Ettinger, and Voci (Count V); (6) a civil conspiracy to commit malicious prosecution claim by Plaintiff Reed against Defendants Bucknell, Bravman, Locher, Badal, Marrara, Friedberg, Holtzapple, Ulmer, Middleton, Fisher, Ettinger, and Voci (Count VI); (7) a defamation claim by Plaintiff Reed against Defendants Bucknell, Ulmer, Middleton, Holtzapple, Fisher, Locher, Marrara, and Voci (Count VII); (8) a fraud claim by Plaintiff Reed against Defendants Bucknell, Conrad, Ulmer, and Holtzapple (Count VIII); (9) a civil conspiracy to commit fraud claim by Plaintiff Reed against Defendants Bucknell and Voci

(Count IX); (10) a breach of contract claim by Plaintiff Reed against Defendant Bucknell (Count X); (11) a claim under Title IX of the Education Amendments of 1972 ("Title IX") by Plaintiff Reed against Defendant Bucknell (Count XI); (12) a negligence claim by Plaintiff Reed against Defendant Bucknell (Count XII); (13) a negligent hiring, supervision, and retention claim by Plaintiff Reed against Defendant Bucknell (Count XIII); (14) a tortious interference with contract claim by Plaintiff Reed against Defendant Voci (Count XIV); (15) a civil conspiracy to commit tortious interference with contract claim by Plaintiff Reed against Defendants Bucknell and Voci (Count XV); (16) an intentional infliction of emotional distress ("IIED") claim by Plaintiff Reed against Defendants Bucknell and Voci (Count XVI); (17) a civil conspiracy to commit IIED by Plaintiff Reed against Defendants Bucknell and Voci (Count XVII); and (18) an IIED claim by Plaintiff Shelley against Defendants Bucknell and Voci (Count XVIII).

In their brief in opposition to the Bucknell Defendants' motion to dismiss, Plaintiffs voluntarily dismissed Defendants Remley and Rishel, who are listed in the caption of their complaint, but not in any counts. (Doc. No. 27 at 16 n.8.) Defendants also moved to dismiss Defendant Smyer from the complaint for the same reason. (Doc. No. 15 at 19.) The Court will dismiss Defendants Smyer, Remley, and Rishel because Plaintiffs did not name them in any of their causes of action. The Court will address each of the claims in the complaint as they pertain to the remaining Defendants in turn.

### A. False Arrest (Count I)

First, Plaintiff Reed asserts a false arrest claim, pursuant to 42 U.S.C. § 1983, against Defendants Bucknell, Holtzapple, Doe, Ulmer, Middleton, Fisher, and Ettinger. (Doc. No. 1 ¶¶ 432-442.) Plaintiffs allege that the officers at the Department of Public Safety did not have

probable cause to arrest Plaintiff Reed, because they knew that the information upon which they based the arrest was false, ignoring contradictory, exculpatory evidence.  (Id. ¶¶ 436-437.)  The Bucknell Defendants move to dismiss this claim, arguing: (1) that the Bucknell Defendants were not acting as state actors; (2) in the alternative, that the Bucknell Defendants are entitled to qualified immunity; and (3) alternatively, that Plaintiffs have failed to properly allege each Defendant's involvement.  (Doc. No. 15 at 11-22.)

To state a cause of action under Section 1983, a plaintiff must establish that a person acting under color of state law violated a right secured by the Constitution or the laws of the United States.  West v. Atkins, 487 U.S. 42, 48 (1988).  One such right arises under the Fourth Amendment, which requires a police officer to have probable cause before arresting a citizen. Rogers v. Powell, 120 F.3d 446, 452 (3d Cir. 1997).  "The proper inquiry in a section 1983 claim based on false arrest or misuse of the criminal process is . . . whether the arresting officers had probable cause to believe the person arrested had committed the offense."  Dowling v. Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  To determine whether an officer had probable cause to arrest, courts must determine whether the "facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Even if an officer did not have probable cause, government officials are entitled to qualified immunity when they perform discretionary functions.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  "In the context of a claim of false arrest and imprisonment by a police officer, the officer is entitled to qualified immunity when a reasonable officer could have believed that probable cause existed to arrest the plaintiff."

Ciardiello v. Sexton, 390 F. App'x 193, 199 (3d Cir. 2010) (citations and quotation marks omitted).

> 1.      *State Action*

First, the Bucknell Defendants argue that Plaintiffs' Section 1983 false arrest claim should be dismissed, because Bucknell is a private institution, and the Bucknell Defendants were not state actors.  (Doc. No. 15 at 19-20.)   In response, Plaintiffs argue that Bucknell Public Safety officers are appointed and sworn as officers under 22 Pa. Cons. Stat. § 501, which allows non-profit corporations to appoint their employees to exercise police powers "in and upon, and in the immediate and adjacent vicinity of" their property.  (Doc. No. 27 at 18-19.)

When a defendant is not a state actor, it may still satisfy the color of state law requirement in some circumstances.  The inquiry is whether the defendant's conduct is "fairly attributable to the state."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  A defendant's conduct satisfies the color of state law if the conduct has been "traditionally the exclusive prerogative of the state."  Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (citations and quotation marks omitted).  In other words, a defendant's conduct will be deemed a state act if the defendant exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  United States v. Classic, 313 U.S. 299, 326 (1941).  In the context of campus police, the Third Circuit has held that "the delegation of police powers, a government function, to the campus police buttresses the conclusion that the campus police act under color of state authority."  Henderson v. Fisher, 631 F.2d 1115, 1118 (3d Cir. 1980).

Here, Plaintiffs allege that Bucknell's officers are appointed and sworn police officers

pursuant to 22 Pa. Cons. Stat. § 501.  (Doc. No. 1 ¶ 434.)  The complaint further alleges that

Defendants Ulmer, Middleton, Ettinger, and Fisher arrested Plaintiff Reed without probable

cause on September 7, 2010, and again on September 10, 2010.  (Id. ¶ 439.)  Thus, Plaintiffs

have alleged that the arresting officers exercised their police power in arresting Plaintiff Reed,

and that the arresting officers derived their power to arrest from the Pennsylvania statute that

grants them the power to effectuate arrests.  This delegation of police powers "buttresses the

conclusion" that the Public Safety officers acted under color of state law.  See Henderson, 631

F.2d at 1118.[2]  Accordingly, Plaintiffs have alleged sufficient facts to support an inference that

the officers acted under color of state law by arresting Plaintiff Reed.

2.    *Qualified Immunity and Probable Cause*

Next, the Bucknell Defendants argue, in the alternative, that the Bucknell Defendants are

entitled to qualified immunity.  (Doc. No. 15 at 25.)  In response, Plaintiffs argue that a

reasonable officer would have known "that K.S. lacked credibility, that probable cause did not

exist and not to omit exculpatory evidence from the affidavit of probable cause."  (Doc. No. 27

---

[2] The court in Henderson examined 71 Pa. Stat. § 646, which grants police power to state universities and colleges.  The Bucknell Defendants argue that this case can be distinguished from Henderson, because unlike Bucknell, the University of Pittsburgh is an instrumentality of Pennsylvania.  Regardless of whether Bucknell is an instrumentality of the Commonwealth, 22 Pa. Cons. Stat. § 501, like the statute in Henderson, allows non-profit organizations to appoint their employees to exercise police power on their premises.  Thus, Plaintiffs' allegations that the campus officers arrested Plaintiff Reed pursuant to the authority of a state statute are sufficient to support an inference that the officers acted under color of state law.  The Court further notes that in Harper v. Franklin & Marshall College, No. 10-cv-2647, 2011 WL 2746644, at *5 (E.D. Pa. July 14, 2011), a court within this circuit reached a different conclusion.  In Haper, the United States District Court for the Eastern District of Pennsylvania held that campus officers were not state actors, despite allegation that they were appointed as private police pursuant to state law. The Court respectfully declines to follow Harper, because the holding in Henderson is binding precedent.

at 41-42.)

"In the context of a claim of false arrest and imprisonment by a police officer, the officer is entitled to qualified immunity when a reasonable officer could have believed that probable cause existed to arrest the plaintiff." Ciardiello, 390 F. App'x at 199.  To state a claim for false arrest based on a warrant, a plaintiff must establish that the defendant "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant," and that "such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks and citations omitted).  An omission is made with reckless disregard if "an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." Id. at 788 (internal quotation marks and citations omitted).  Similarly, an assertion is made with reckless disregard for the truth if the "affiant . . . entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. (internal quotation marks and citations omitted).

In their complaint, Plaintiffs allege that Plaintiff Reed was arrested after officers obtained an arrest warrant, which was based on an affidavit of probable cause.  (Doc. No. 1 ¶¶ 145, 173, 258-260, 439-440.)  Plaintiffs allege that the officers obtained the arrest warrant without probable cause, willfully and intentionally omitting material exculpatory information, and arrested Plaintiff Reed knowing that the information upon which they based the arrest was false. (Id. ¶¶ 436-440.)  Plaintiffs allege that the officers knew about exculpatory and contradictory evidence, but ignored it.  (Id. ¶ 437.)  Plaintiffs further allege that the officers interviewed a

number of students, whose statements contradicted those of K.S., and that the officers ignored those statements when deciding to file criminal charges.  (Id. ¶¶ 125, 127, 144.)

While the Bucknell Defendants have presented an argument that the officers had probable cause based on certain facts alleged in the complaint, the Court must accept all of the allegations in the complaint as true.  Because Plaintiffs have alleged that the Public Safety officers arrested Plaintiff Reed knowing that the information upon which they based the arrest was false, Plaintiffs have alleged sufficient facts to support a finding that they lacked probable cause.  Furthermore, where an "officer submits an affidavit containing statements he knows to be false," he is not entitled to qualified immunity.  Lippay v. Christos, 996 F.2d 1490, 1504 (3d Cir. 1993) (citing Malley v. Briggs, 475 U.S. 335, 345 (1986); Olson v. Tyler, 771 F.2d 277, 281 (7th Cir. 1985)).  Accordingly, at this early stage, the Court cannot find that the doctrine of qualified immunity would shield the officers from liability for false arrest.

3.    *Defendant Involvement*

The Bucknell Defendants next argue that, even if the Bucknell Defendants were state actors and qualified immunity does not apply, Plaintiffs have still failed to state a claim, because Plaintiffs have failed to allege sufficient facts to support an inference that the Bucknell Defendants were involved in Plaintiff Reed's arrest.  (Doc. No. 15 at 26.)  While discovery may reveal more detail about how each Defendant was involved, the Court is satisfied that Plaintiffs have sufficiently alleged the Public Safety officers' involvement in obtaining Plaintiff Reed's arrest warrant and in arresting Plaintiff Reed.  Plaintiffs have alleged that Defendants Holtzapple, Ulmer, and Middleton participated in drafting criminal charges and an affidavit of probable cause, and that they willfully and intentionally omitted material, exculpatory evidence.

13

(Doc. No, 1 ¶¶ 144-145, 440.)  Further, Plaintiffs have alleged that Defendants Doe and

Holtzapple actually removed Plaintiff Reed from campus in a police car.  (Id. ¶¶ 244-245.)

Plaintiffs also allege that Defendants Ettinger, Holtzapple, Ulmer, Middleton, and Fisher arrested

Plaintiff Reed twice.  (Id. ¶ 439.)  The Court must accept as true the allegations of the complaint,

and Plaintiffs' allegations about Plaintiff Reed's arrest are specific enough to "raise a right to

relief above the speculative level."  See Twombly, 550 U.S. at 555.  However, Plaintiffs have not

alleged any personal involvement by Defendant Bucknell as to their false arrest claim.  "A

defendant in a civil rights action must have personal involvement in the alleged wrongs; liability

cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellarciprete, 845

F.2d 1195, 1207 (3d Cir. 2005).  Thus, the Court will dismiss without prejudice Plaintiffs' false

arrest claim against Defendant Bucknell, but will deny the Bucknell Defendant's motion to

dismiss this claim against Defendants Ettinger, Holtzapple, Ulmer, Middleton, Fisher, and Doe.

## B.      Malicious Prosecution (Count II)

In Count II of the complaint, Plaintiff Reed asserts a malicious prosecution claim against

Defendants Bucknell, Holtzapple, Ulmer, Middleton, Fisher, and Ettinger.  (Doc. No. 1 ¶¶ 443-

449.)  The Bucknell Defendants moved to dismiss this claim, arguing that Plaintiffs have not

alleged sufficient facts to support a claim for malicious prosecution.  (Doc. No. 15 at 30-32.)

To state a claim for malicious prosecution, a plaintiff must establish that: (1) the

defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's

favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted

maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff

suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal

proceeding.  <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir. 2003).  The Bucknell

Defendants argue that Plaintiffs have failed to allege facts sufficient to establish the third, fourth,

and fifth elements.  The Court has, however, already determined that Plaintiffs have alleged

sufficient facts to support an inference that the arresting officers lacked probable cause.  <u>See</u>

Section III.A.2.  Thus, the Court will focus on the fourth and fifth elements of a malicious

prosecution claim.

Regarding the fourth element, the Bucknell Defendants argue that Plaintiffs have failed to

plead any facts demonstrating that the Bucknell Defendants acted maliciously, or with any

motive other than bringing Plaintiff Reed to justice.  (Doc. No. 15 at 23.)  However, Plaintiffs

have alleged sufficient facts that, if proven, support an inference that the officers lacked probable

cause, and "[m]alice may be inferred from the absence of probable cause."  <u>Lippay</u>, 996 F.2d at

1502.  Malice can mean ill will, or a "lack of belief in the guilt of the accused."  <u>Id.</u>  Here,

Plaintiffs have alleged that the Public Safety officers arrested Plaintiff Reed, knowing that the

information upon which they based the arrest was false.  (Doc. No. 1 ¶ 436.)  Further, Plaintiffs

alleged that the officers submitted an affidavit of probable cause with false information, provided

knowingly false information to the Union County District Attorney's office, and maliciously

assisted in the prosecution of Plaintiff Reed, knowing that they did not have probable cause.  (<u>Id.</u>

¶¶ 444-447.)  Thus, Plaintiffs have alleged sufficient facts to support an inference that the

officers arrested Plaintiff Reed with a "lack of belief in the guilt of the accused."  <u>See</u> <u>Lippay</u>,

996 F.2d at 1502.

Regarding the fifth element of a malicious prosecution claim, the Bucknell Defendants

argue that Plaintiffs have not sufficiently pleaded that Plaintiff Reed was seized as a

consequence of the criminal charges.  (Doc. No. 15 at 31.)  "When the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the meaning of the Fourth Amendment."  Schneyder v. Smith, 653 F.3d 313, 321-22 (3d Cir. 2011).  Here, Plaintiffs have alleged that Plaintiff Reed was arrested after Defendant Holtzapple filed a second criminal complaint against Plaintiff Reed on September 10, 2010.  (Doc. No. 1 ¶¶ 258-260.) Because Plaintiffs have alleged that Plaintiff Reed was arrested as a result of the criminal charges filed by the officers, Plaintiffs have alleged sufficient facts to support an inference that Plaintiff Reed suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

The Bucknell Defendants also argue that Plaintiffs have failed to sufficiently plead the involvement of each defendant.  However, for the reasons explained in Section III.A.3 above, Plaintiffs have sufficiently alleged that Defendants Holtzapple, Ulmer, Middleton, Fisher, and Ettinger participated in initiating criminal charges against Plaintiff Reed.  Specifically, Plaintiffs allege that all of these officers knowingly submitted an affidavit containing false information to the Magisterial District Judge, and to the Union County District Attorney's office.  (Doc. No. 1 ¶¶ 444-445.)  Plaintiffs have not, however, alleged any personal involvement by Defendant Bucknell as to their malicious prosecution claim.  Thus, the Court will dismiss without prejudice Plaintiffs' malicious prosecution claim against Defendant Bucknell, but will deny the Bucknell Defendants' motion to dismiss this claim against Defendants Ettinger, Holtzapple, Ulmer, Middleton, and Fisher.

C.    **Supervisory Liability (Count III)**

Next, in Count III of Plaintiffs' complaint, Plaintiff Reed asserts a supervisory liability claim against Defendants Bucknell, Bravman, Locher, Badal, Marrara, Lauver, and Friedberg. (Doc. No. 1 ¶¶ 450-456.)  Specifically, Plaintiffs allege that: (1) Defendant Bucknell has been deliberately indifferent to constitutional rights by failing to train its officers; (2) Defendants Friedberg, Locher, Badal, Marrara, and Bravman are all final policymakers for law enforcement, and that they ratified the false arrest and malicious prosecution of Plaintiff Reed; and (3) Defendant Lauver had authority to stop the arrest and prosecution of Plaintiff Reed, but did not despite his knowledge that probable cause did not exist.  The Bucknell Defendants argue that Plaintiffs have failed to sufficiently allege that each of the named Defendants were "involved personally" with the alleged false imprisonment and malicious prosecution.  (Doc. No. 15 at 34.)

### 1.   Failure to Train

First, Plaintiffs allege that Bucknell has been deliberately indifferent to the constitutional rights of individuals, including Plaintiff Reed, by failing to train its officers on how to investigate potential crimes, what constitutes malicious prosecution, and what constitutes probable cause for an arrest.  (Doc. No. 1 ¶ 452.)  To state a claim for failure to train, a plaintiff must establish that the supervising defendant's "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  The standard of deliberate indifference is, however, a "stringent standard of fault," which requires proof that the supervisor "disregarded a known or obvious consequence of his action."  Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."  Connick v. Thompson, 131

S.Ct. 1350, 1359 (citing <u>Bryan Cnty.</u>, 520 U.S. at 409).  Additionally, a "continued adherence to

an approach that they know or should know has failed to prevent tortious conduct by employees"

may constitute deliberate indifference.  <u>Id.</u> (quoting <u>Bryan Cnty.</u>, 520 U.S. at 409).

Here, Plaintiffs allege that Bucknell has been deliberately indifferent, but have alleged no

facts to support that statement.  Plaintiffs' assertion that Bucknell has been deliberately

indifferent is little more than a "naked assertion," or "a formulaic recitation of the elements of a

cause of action."  <u>Iqbal</u>, 129 S.Ct. at 1949.  Thus, Plaintiffs have failed to state a claim against

Defendant Bucknell for failure to train pursuant to Section 1983.

### 2.    *Ratification by Policymakers*

Plaintiffs also allege that Defendants Friedberg, Locher, Badal, Marrara, and Bravman

are all final policymakers, and that they ratified the false arrest and malicious prosecution of

Plaintiff Reed.  (Doc. No. 1 ¶ 453.)  Plaintiffs thus assert claims against each of these alleged

policymakers, and against Defendants Bucknell pursuant to <u>Monell v. Department of Social</u>

<u>Services</u>, 436 U.S. 658 (1978).

To the extent that Plaintiffs attempt to assert liability directly against the alleged

policymakers named in Count III, <u>Iqbal</u> reiterates that supervisors may not be held liable for the

conduct of their subordinates under a theory of <u>respondeat</u> <u>superior</u>.  <u>Iqbal</u>, 129 S.Ct. at 1948.

Rather, to state a claim against a supervisor, a plaintiff must establish that each defendant

violated the constitution, through his or her own individual actions.  <u>Id.</u>  In order to establish

supervisory liability, a plaintiff must show that a supervisor "participated in violating their

rights, or that he directed others to violate them, or that he . . . had knowledge of and acquiesced

in his subordinates' violations."  <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

In other words, a plaintiff must establish an affirmative link between the constitutional violation and the supervising defendant.  Worrell v. Henry, 219 F.3d 1197, 1214 (10th Cir. 2000) (internal citations and quotation marks omitted).

Here, Plaintiffs have alleged that Defendants Friedberg, Locher, Badal, Marrara, and Bravman all "personally knew of, encouraged and assisted in the malicious and reckless actions" taken by the officers that arrested Plaintiff Reed.  (Doc. No. 1 ¶ 454.)  Plaintiffs allege that these Defendants continued to ratify the actions of the Public Safety officers "even though they were personally aware that . . . the allegations of sexual assault were not credible."  (Id. ¶ 455.)  At the pleading stage, these allegations sufficiently support an inference of an affirmative link between the acts of the arresting officers and these supervisory Defendants.

To the extent that Plaintiffs attempt to assert liability against Defendant Bucknell for the acts of its employees, Monell provides that a municipality is not vicariously liable for the actions of its employees, unless the alleged violations are the result of an official governmental policy or custom.  Monell, 436 U.S. at 694.  Monell applies not only to municipalities, but also extends to private organizations faced with Section 1983 liability for actions under color of state law. Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals, 766 F. Supp. 2d 555, 561-62 (E.D. Pa. 2011); see also Regan v. Upper Darby Twp., 363 F. App'x 917, 922 (3d Cir. 2010) ("[A] city, municipality, or private entity that is a state actor may not be held vicariously liable under § 1983 for the actions of its agents because there is no respondeat superior theory of municipal liability.") (emphasis added) (internal quotation marks omitted); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  While Monell bars Section 1983 actions based on a theory of respondeat superior, liability may be imposed on a municipality or

an organization acting under color of state law where constitutional injury results from the decisions of an official with final policymaking authority.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

In their complaint, Plaintiffs have alleged that officials with final policymaking authority for day-to-day law enforcement activities ratified the Public Safety officers' arrest and prosecution of Plaintiff Reed.  (Doc. No. 1 ¶¶ 453-455.)  Such allegations are sufficient, at the pleading stage, to state a cause of action against Defendant Bucknell for the acts of its policymakers.

### 3. *Bystander Liability*

Third, Plaintiffs allege that Defendant Lauver is liable as a bystander, because he had the authority to stop the arrest and prosecution of Plaintiff Reed, but he failed to intervene, knowing that the officers lacked probable cause.  (Doc. No. 1 ¶ 456.)

The Third Circuit has recognized that officers, whether supervisory or not, can be liable under Section 1983 for failing to intervene when a constitutional violation takes place in his or her presence.  <u>Smith v. Mensinger</u>, 293 F.3d 641, 650-51 (3d Cir. 2002); <u>see also</u> <u>Randall v. Prince Georg's Cnty.</u>, 302 F.3d 188, 203-04 (4th Cir. 2002); <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994).  An officer that does not intervene when a constitutional violation takes place in his or her presence will only be liable if there was a "realistic and reasonable opportunity to intervene."  <u>Smith</u>, 293 F.3d at 651.

Here, Plaintiffs allege that Defendant Lauver knew that arresting officers lacked probable

cause to arrest and prosecute Plaintiff Reed, that he had the authority to stop the arrest and prosecution, and that he failed to do so.  Thus, at this stage, Plaintiffs have alleged sufficient facts to support an inference that Defendant Lauver had a "realistic and reasonable opportunity to intervene" and prevent the arrest and prosecution of Plaintiff Reed, or that he "had knowledge of and acquiesced in his subordinates' violations."  See id.; Baker, 50 F.3d at 1190-91.  If the arrest and prosecution of Plaintiff Reed constitutes a constitutional violation, Plaintiffs have alleged sufficient facts to withstand a motion to dismiss a supervisory liability or bystander liability claim against Defendant Lauver.

### D.      False Imprisonment (Count IV)

In Count IV of Plaintiffs' complaint, Plaintiff Reed asserts a false imprisonment claim against Defendants Bucknell, Bravman, Locher, Badal, Marrara, Friedberg, Holtzapple, Doe, Ulmer, Middleton, Fisher, and Ettinger.  (Doc. No. 1 ¶¶ 457-463.)  The Bucknell Defendants move to dismiss this claim for the same reasons that they moved to dismiss Plaintiffs' false arrest claim.  (Doc. No. 15 at 35.)  In response, Plaintiffs explain that their false imprisonment claim is a state-law claim, rather than a Section 1983 claim.  (Doc. No. 27 at 48.)

To state a claim for false imprisonment under Pennsylvania law, a plaintiff must establish the following two elements: "(1) the detention of another person, and (2) the unlawfulness of such detention."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  In a state-law false imprisonment claim against a police officer, as in a false arrest claim, the relevant inquiry is whether the officer had probable cause to arrest the plaintiff.  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  While a plaintiff cannot state a Section 1983 claim based on a theory of respondeat superior, the Pennsylvania tort of false imprisonment is not subject to the same

rule.  The general rule is that "[a]n employer is vicariously liable for the wrongful acts of an

employee if that act was committed during the course of and within the scope of employment."

Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 39 (Pa. Super. Ct. 2000).  However, 42

Pa. Cons. Stat. § 8541 provides that "no local agency shall be liable for any damages on account

of any injury to a person or property caused by any act of the local agency or employee thereof

or any other person."  Nonetheless, such immunity does not extend to willful acts of employees.

42 Pa. Cons. Stat. § 8550.  A false arrest claim can, but does not necessarily, constitute willful

conduct.  Renk, 641 A.2d at 293-94.

Here, Plaintiffs allege that Defendants Holtzapple, Doe, Ulmer, Middleton, Fisher, and

Ettinger arrested Plaintiff Reed without probable cause.  (Doc. No. 1 ¶ 459.)  For the same

reason that Plaintiffs' false arrest claim brought pursuant to Section 1983 against these

Defendants survives, this claim will also survive the Bucknell Defendants' motion to dismiss.

Plaintiffs also allege that Defendant Bucknell is liable for the acts of these employees.  (Id. ¶

458.)  Because Bucknell is the officers' employer, a claim against Bucknell will survive based

on a theory of respondeat superior.  Further, for all of the same reasons that Plaintiffs' Section

1983 claims against the officers' supervisors, Defendants Bravman, Locher, Badal, Marrara, and

Friedberg, survived the motion to dismiss, Plaintiffs' state-law claims against these Defendants

will also survive.  (See Doc. No. 1 ¶ 454 (alleging that these Defendants "personally knew of,

encouraged and assisted in the malicious and reckless actions" taken by the officers that arrested

Plaintiff Reed).)

### E.     Civil Conspiracy to Commit False Arrest (Count V) and Civil Conspiracy to Commit Malicious Prosecution (Count VI)

Next, Plaintiff Reed asserts a civil conspiracy to commit false arrest claim against

Defendants Bucknell, Bravman, Locher, Badal, Marrara, Friedberg, Holtzapple, Doe, Ulmer, Middleton, Fisher, Ettinger, and Voci.  (Doc. No. 1 ¶¶ 464-470.)  The Bucknell Defendants and Defendant Voci move to dismiss this count, arguing that Plaintiffs have failed to state a claim for civil conspiracy.  (Doc. No. 15 at 35-38; Doc. No. 16 at 14-16.)  Plaintiff Reed also asserts a civil conspiracy to commit malicious prosecution claim against these same defendants, excluding Defendant Doe.  (Doc. No. 1 ¶¶ 471-477.)

To state a claim for civil conspiracy, a plaintiff must establish the following elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).  "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy."  Fife v. Great Atl. & Pac. Tea Co., 52 A.2d 24, 39 (Pa. 1947).  Intent to injure is another essential element of a conspiracy cause of action.  Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).

Here, Plaintiffs have alleged that Defendant Voci conspired with Defendants Bravman, Locher, Badal, Marrara, Friedberg, Holtzapple, Doe, Ulmer, Middleton, Fisher, Ettinger, and Bromfield to ensure that Plaintiff Reed "have a [criminal] record."  (Doc. No. 1 ¶¶ 465-467.)  Plaintiffs allege that "[a]ll of these unlawful acts where [sic] done with the common purpose" between Defendants Voci and Bucknell.  (Id. ¶ 468.)  Regarding the alleged malicious prosecution claim, Plaintiffs allege that Defendant Voci conspired with Bucknell officials to

accomplish malicious prosecution and to suppress exculpatory evidence.  (Id. ¶¶ 473-474.)

These bald allegations are not sufficient to state a claim for civil conspiracy.  At the pleading

stage, a plaintiff must allege "particularized facts" including the "period of the conspiracy, the

object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that

purpose."  Bair v. Purcell, 500 F. Supp. 2d 468, 500 (M.D. Pa. 2007) (quoting Kalmanovitz v.

Heileman Brewing Co., 595 F. Supp. 1385, 1401 (D. Del. 1984), aff'd 769 F.2d 152 (3d Cir.

1985)).  Plaintiffs have not even alleged that there was an agreement or combination between the

Defendants.  Plaintiffs' allegation that unlawful acts were done with a common purpose amount

to nothing more than "formulaic recitation[s]," and do not raise Plaintiffs' right to relief beyond

the speculative level.  See Twombly, 550 U.S. at 555.  Thus, the Court will dismiss without

prejudice Plaintiffs' civil conspiracy to commit false arrest claim and civil conspiracy to commit

malicious prosecution claim.

### G.    Defamation (Count VII)

Count VII of the complaint is a defamation claim by Plaintiff Reed against Defendants

Bucknell, Ulmer, Middleton, Holtzapple, Fisher, Locher, Marrara, and Voci.  (Doc. No. 1 ¶¶

478-500.)  Plaintiffs allege that these Defendants referred to Plaintiff Reed as a sexual assault

perpetrator, even though they knew that the allegations were false.  (Id. ¶ 480.)  The Bucknell

Defendants and Defendant Voci moved to dismiss this claim.  (Doc. No. 15 at 38-41; Doc. No.

16 at 18-20.)

To state a claim for defamation under Pennsylvania law, a plaintiff must establish: (1) the

defamatory character of the communication; (2) its publication by the defendant; (3) its

application to the plaintiff; (4) the understanding by the recipient of the defamatory meaning; (5)

the understanding by the recipient that the statement refers to the plaintiff; (6) special harm

resulting to the plaintiff from its publication; and (7) abuse of a constitutionally privileged

occasion.  42 Pa. Cons. Stat. § 8343.  "A publication is defamatory if it 'tends to blacken a

person's reputation or expose him to public hatred, contempt or ridicule or injure him in his

business or profession.'"  Dunlap v. Phila. Newspapers, Inc., 448 A.2d 6, 10 (Pa. Super. Ct.

1982) (quoting Cosgrove Studio & Camera Shop, Inc. v. Pane, 182 A.2d 751, 753 (Pa. 1962)).

"In order to be actionable, the words must be untrue, unjustifiable, and injurious to the reputation

of another."  Joseph v. Scranton Times L.P., 959 A.2d 322, 334 (Pa. Super. Ct. 2008).  A

plaintiff need not prove special damages in an action for slander per se; that is, an action

involving "words imputing a criminal offense, a loathsome disease, business misconduct, or

serious sexual misconduct."  Chicarella v. Passant, 494 A.2d 1109, 1115 n.5 (Pa. Super. Ct.

1985) (citing Restatement (Second) of Torts § 570 (1977)).

    Here, Plaintiffs allege that the following constitute defamatory statements: (1)

Defendants Ulmer and Middleton typed criminal charges and an affidavit of probable cause

accusing Plaintiff Reed of simple assault, harassment, and disorderly conduct, which Defendant

Holtzapple signed; (2) Defendants Locher and Marrara had Plaintiff Reed suspended, and

Defendant Locher issued Plaintiff Reed a written temporary suspension order; (3) Defendant

Locher told Plaintiff Shelley that Plaintiff Reed "must have a lot bottled up inside," and that he

was "holding a lot in;" (4) Defendant Holtzapple filed a second criminal complaint, charging

Plaintiff Reed with false imprisonment, simple assault, indecent assault, disorderly conduct, and

harassment; (5) Defendant Voci referred to Plaintiff Reed as a dangerous sexual offender on a

phone call with attorneys for Bucknell and Plaintiff Reed; (6) Defendant Voci sent a letter to

25

Defendant Conrad, referring to Plaintiff Reed as "the perpetrator of a sex crime" who was allowed to "misuse the internal process to continue to victimize a student/victim;" (7) Defendant Voci wrote a letter to an attorney for Bucknell, referring to Plaintiff Reed as an "attacker" in a "sex crime," stating that Plaintiff Reed attempted to "force himself upon a female college student;" (8) Defendant Voci informed Pennsylvania state senators that Plaintiff Reed sexually assaulted K.S.; (9) Defendant Voci informed media outlets that Plaintiff Reed hit K.S. in her breast and groin, referring to Plaintiff Reed as an attacker; (10) representatives of Bucknell discussed the sexual misconduct hearing with the press; and (11) the Bucknell sexual misconduct board found Plaintiff Reed responsible for disorderly conduct, and issued a formal letter of censure.  (Doc. No. 1 ¶ 490.)  Plaintiffs further allege that these statements were published, applied to Plaintiff Reed, that the recipients understood their defamatory character, that the recipients understood the application of the statements to Plaintiff Reed, that the statements harmed Plaintiff Reed's reputation, and that the statements were not privileged.  (Id. ¶¶ 489, 493-500.)

### 1. *Statements by Bucknell Defendants*

None of the statements made by Bucknell Defendants support an action for defamation. First, the documents prepared by Bucknell public safety officers charging Plaintiff Reed with various crimes are privileged.  In Pennsylvania, statements by "judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged."  Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991).  The privilege extends to statements made for the purpose of inducing criminal prosecution.  Id. at 41-43.  Thus, Plaintiff Reed's defamation claim must fail to the extent that it is based on statements made by

Bucknell employees for the purpose of inducing criminal prosecution of Plaintiff Reed.

Next, Plaintiffs have not alleged sufficient facts to support a conclusion that Plaintiff Reed's suspension is actionable in defamation.  The Court recognizes that certain gestures or innuendos can be treated as defamatory statements.  See Bennett v. Norban, 151 A.2d 476, 478 (Pa. 1959).  However, apart from the bald assertion that all of the "defamatory statements" were intended to convey Plaintiff Reed's guilt of crimes involving moral turpitude (Doc. No. 1 ¶ 482), Plaintiffs have not alleged what message Plaintiff Reed's temporary suspension was intended to convey.  Accordingly, Plaintiffs have not alleged sufficient facts to support a finding that Plaintiff Reed's suspension was a defamatory statement.  Similarly, Bucknell's finding that Plaintiff Reed was responsible for disorderly conduct cannot form the basis of a defamation action, as Plaintiffs have not alleged sufficient facts to support a finding that this act constitutes a defamatory statement.  Plaintiffs have not alleged that this conduct communicated a statement that was defamatory or untrue.

Plaintiffs' allegations regarding Defendant Locher's conversation with Plaintiff Shelley are not actionable in defamation either.  Plaintiffs have alleged that Defendant Locher told Plaintiff Shelley that Plaintiff Reed "must have a lot bottled up inside," and that he was "holding it in."  (Id. ¶ 490(c).)  These statements are not statements of fact that could be false; instead, Defendant Locher's statements are merely statements of opinions.  Courts must view statements in context, given the effect that the statement is likely to produce.  Baker v. Lafayette Coll., 532 A.2d 399, 402 (1987).  Under Pennsylvania law, "statements of opinion, without more, are not actionable."  Green v. Mizner, 692 A.2d 169, 174 (Pa. Super. Ct. 1997).  An opinion is only actionable if it can be construed as implying undisclosed facts of a defamatory nature.  Remick

v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001).  In the context of a conversation with Plaintiff

Reed's mother, Plaintiffs have not alleged facts to support a finding that Defendant Locher's

statement that Plaintiff Reed "must have a lot bottled up inside" is anything more than an

opinion, rather than a defamatory statement tending to blacken Plaintiff Reed's reputation.

Finally, Plaintiffs have not alleged sufficient facts regarding the statements allegedly

made by Bucknell employees to the media.  Plaintiffs allege that representatives of Bucknell

discussed the sexual misconduct hearing with the press; however, Plaintiffs do not allege what

the officials allegedly said.  Plaintiffs correctly point out that a plaintiff need not plead the

precise defamatory statements.  (Doc. No. 27 at 54.)  "However, although the exact words need

not be stated, the complaint must specify the substance of the spoken words; the purport of the

spoken words is necessary."  Itri v. Lewis, 422 A.2d 591, 592-93 (Pa. Super. Ct. 1980).  This

requirement allows the court to determine "whether particular words are capable of a defamatory

construction."  Id. at 593.  Here, Plaintiffs have alleged only that Bucknell officials discussed

Plaintiff Reed's sexual misconduct hearing with the media.  These allegations do not allow the

Court to evaluate whether the statements are capable of a defamatory construction.  Accordingly,

the Court will dismiss Plaintiff Reed's defamation claim against the Bucknell Defendants

without prejudice.

> 2.      *Statements by Defendant Voci*

With respect to the statements that Defendant Voci allegedly made, Plaintiffs have

pleaded sufficient facts to state a claim for defamation.  Plaintiffs allege that Defendant Voci

referred to Plaintiff Reed as a dangerous sexual offender, "the perpetrator of a sex crime," and an

"attacker" in a "sex crime."  Plaintiffs have alleged that these statements were false.  (Doc. No. 1

¶ 480.)  These statements would tend to harm Plaintiff Reed's reputation in the community.

Plaintiffs have alleged that Defendant Voci published these statements by stating them to, inter

alia, Bucknell officials, state senators, and a newspaper.  These statements clearly related to

Plaintiff Reed, and it is plausible that a recipient of the communications would understand the

defamatory meaning of the statements as well as their application to Plaintiff Reed.  Further, the

statements accuse Plaintiff Reed of serious sexual misconduct, thereby implicating the doctrine

of slander per se, and obviating the requirement that Plaintiff allege special harm.  Chicarella,

959 A.2d at 334.

Defendant Voci alleges that all of these statements are privileged and that he was merely

furthering the interests of his client.  Indeed, statements by "judges, attorneys, witnesses and

parties in the course of or pertinent to any stage of judicial proceedings are absolutely

privileged."  Pawlowski, 588 A.2d at 41.  However, Plaintiffs have alleged that Defendant Voci

made statements outside of any judicial proceeding.  Thus, Plaintiffs have alleged sufficient facts

to support a finding that Defendant Voci's statements exceed the scope of the absolute privilege

for statements made in the course of judicial proceedings.  Accordingly, the Court will deny

Defendant Voci's motion to dismiss Plaintiffs' defamation claim against him.

### H.      Fraud (Count VIII)

In Count VIII of Plaintiffs' complaint, Plaintiff Reed asserts a fraud claim against

Defendants Bucknell, Conrad, Ulmer, and Holtzapple.  (Doc. No. 1 ¶¶ 501-515.)  Plaintiffs

allege: (1) that on September 6, 2010, Defendant Ulmer withheld K.S.'s written statement from

Plaintiff Reed, and stated that K.S. had not pressed charges against him; (2) that Defendant

Holtzapple failed to turn over an audio recording of K.S.'s statement; (3) that Defendant

Bucknell hid materials that would have aided in Plaintiff Reed's defense; and (4) that Defendant Bucknell made materially false representations by withholding exculpatory materials from Plaintiff Reed.  (Id. ¶¶ 506, 508, 510, 511.)  Plaintiffs allege that Plaintiff Reed justifiably relied on these "misrepresentations," and was harmed.

To state a claim for fraud, a plaintiff must plead sufficient facts to support the following six elements: (1) a representation; (2) which is material; (3) which was made falsely, either knowingly or recklessly; (4) with intent to mislead another into relying on it; (5) justifiable reliance; and (6) resulting injury (proximate causation).  Sewak v. Lockhart, 699 A.2d 755, 759 (Pa. Super. Ct. 1997).  Additionally, Rule 9 of the Federal Rules of Civil Procedure imposes a heightened pleading standard for allegations of fraud.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Thus, Rule 9(b) requires a plaintiff to plead "the who, what, when, where, and how: the first paragraph of any newspaper story."  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (quoting  DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990)), overruled in part on other grounds, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).

Plaintiffs only sufficiently allege a fraudulent representation with respect to their first allegation: that Defendant Ulmer told Plaintiff Reed that K.S. had not pressed charges against him.  The rest of the allegations either do not constitute representations, or do not specify what the allegation was or who made it.  With respect to their allegation regarding Defendant Ulmer's representation that K.S. had not pressed charges against Plaintiff Reed, Plaintiffs also allege that Plaintiff Reed justifiably relied on the statement in not seeking to contest statements made by

K.S., thereby limiting his ability to exonerate himself.  (Doc. No. 1 ¶¶ 507, 513.)  Thus, Plaintiffs

have pleaded the "who, what, when, where, and how" as to representation that Defendant Ulmer

made regarding whether or not K.S. had pressed charges against Plaintiff Reed.  Furthermore,

Bucknell is Defendant Ulmer's employer, and "[a]n employer is vicariously liable for the

wrongful acts of an employee if that act was committed during the course of and within the

scope of employment."  Brezenski, 755 A.2d at 39.  Thus, the Court will not dismiss Plaintiff

Reed's fraud claim against Defendants Ulmer and Bucknell at this stage.  The Court will,

however, dismiss without prejudice Plaintiff Reed's fraud claim against Defendants Holtzapple

and Conrad.

### I.      Civil Conspiracy to Commit Fraud (Count IX)

Next, Plaintiff Reed asserts a civil conspiracy to commit fraud claim against Defendants

Bucknell and Voci.  (Doc. No. 1 ¶¶ 516-523.)  Plaintiffs allege that Defendant Voci conspired

with Defendant Bucknell to suppress exculpatory evidence for the common purpose of

misleading Plaintiff Reed and the prosecutors from knowing that K.S.'s allegations were false.

However, Plaintiffs have failed to allege a fraudulent representation with respect to the alleged

suppression of exculpatory evidence, and have failed to allege an agreement or combination

between Defendant Voci and Defendant Bucknell.  Plaintiffs' bald assertion that Defendants

Voci and Bucknell officials "conspired to suppress evidence" is insufficient to support a claim

for civil conspiracy.  As explained in Section III.E above, in a civil conspiracy claim, a plaintiff

must allege the "period of the conspiracy, the object of the conspiracy, and certain actions of the

alleged conspirators taken to achieve that purpose."  Bair, 500 F. Supp. 2d at 500.  Plaintiffs

have failed to allege sufficient facts to support a civil conspiracy to commit fraud claim, and thus

the Court will dismiss this claim without prejudice.

**J.    Breach of Contract (Count X)**

In Count X of Plaintiffs' complaint, Plaintiff Reed asserts a breach of contract claim

against Defendant Bucknell.  (Doc. No. 1 ¶¶ 524-528.)  Plaintiffs allege that a contractual

relationship existed between Plaintiff Reed and Bucknell, that Bucknell's Student Handbook

outlines some of the terms of that relationship, and that Defendant Bucknell breached its contract

with Plaintiff Reed by failing to comply with the Student Handbook.[3]  (Id. ¶¶ 525-526.)

Specifically, Plaintiffs allege that Defendant Bucknell failed to comply with the Student

Handbook by: (1) failing to provide fair notice of the parameters of the charged offenses; (2)

failing to adequately and impartially investigate the allegations against Plaintiff Reed; (3) failing

to locate and/or preserve relevant information that would have established that K.S.'s testimony

and statements were false; (4) failing to provide Plaintiff Reed with relevant information that he

requested for the sexual misconduct hearing; (5) failing to compel K.S. to testify at the hearing;

(6) failing to dismiss K.S.'s claims after she refused to participate in the hearing; (7) finding

Plaintiff Reed guilty of disorderly conduct despite K.S.'s refusal to answer any questions and a

total lack of evidence to support the finding; (8) failing to grant Plaintiff Reed's appeals; and (9)

failing to maintain records of the sexual misconduct hearing and the appellate proceedings.  (Id.

¶ 526.)  Plaintiffs have alleged that Plaintiff Reed has been damaged as a result of these

---

[3] Plaintiffs did not attach the Student Handbook to their complaint; however, the Court will consider the Student Handbook attached to the Bucknell Defendant's brief in support of its motion to dismiss.  (Doc. No. 15-12.)  While the Court is bound to accept as true all of the allegations of the complaint in reviewing a Rule 12(b)(6) motion to dismiss, the Court may consider the Student Handbook, because it is integral to Plaintiff Reed's breach of contract claim.  See Mele v. F. Reserve Bank of N.Y., 359 F.2d 251, 256 (3d Cir. 2004).  Further, Plaintiffs do not object to the Court's consideration of the Student Handbook.

breaches.  (Id. ¶ 527.)

To state a claim for breach of contract, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages.  Lackner v. Glosser, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). "[T]he relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract." Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999).  Thus, the Court is satisfied that Plaintiffs have sufficiently pleaded the existence of a contract between Plaintiff Reed and Defendant Bucknell and need only determine whether Plaintiffs' allegations are sufficient to support a finding that Defendant Bucknell breached the terms of the contract as contained in the Student Handbook.  The Court will address each alleged breach in turn.

### 1.    Notice of the Parameters of the Charged Offenses

Plaintiff Reed first alleges that Defendant Bucknell failed to provide fair notice of the parameters of the charged offenses.  (Doc. No. 1 ¶ 526(a).)  This allegation is insufficient to form the basis of a breach of contract claim because, accepting all of the allegations of Plaintiffs' complaint as true, Defendant Bucknell did in fact notify Plaintiff Reed about the parameters of the charged offenses.  The Student Handbook provides that, after an aggrieved party initiates charges against a student, the Student Conduct Administrator for Sexual Misconduct "will meet with the respondent and the Consultant for the Respondent to notify that a charge of sexual misconduct has been filed and will be investigated by the Department of Public Safety."  (Doc. No. 15-12 at 45.)  Plaintiffs have not alleged sufficient facts to support an inference that

Defendant Bucknell failed to comply with this requirement, because Plaintiffs have alleged that Defendant Conrad notified Plaintiff Reed of the charges against him.  (Doc. No. 1 ¶ 267.)

### 2.     *Adequate Investigation*

Next, Plaintiff Reed alleges that Defendant Bucknell failed to conduct an adequate investigation of the allegations against him.  (Id. ¶ 526(b).)  The Student Handbook provides that the Public Safety department will investigate the charge against an accused and "deliver the investigation materials to the [Student Conduct Administrator for Sexual Misconduct] for a determination of whether or not sufficient evidence exists to move forward."  (Doc. No. 15-12 at 45.)  The Student Handbook does not detail what an investigation must entail; instead, it only requires that an investigation be conducted.  Here, Plaintiffs have alleged that the Public Safety department conducted interviews with numerous students and the RA in Plaintiff Reed's residence hall.  The allegations of Plaintiffs' complaint, thus, do not support a claim for breach of contract based on Defendant Bucknell's duty to conduct an investigation.

### 3.     *Failure to Establish the Falsity of K.S.'s Allegations*

Next, Plaintiff Reed alleges that Defendant Bucknell failed to locate and preserve relevant information that would have established that K.S.'s testimony and statements were false.  (Doc. No. 1 ¶ 526(c).)  This claim essentially restates Plaintiffs' allegations that Defendant Bucknell inadequately investigated the charges against Plaintiff Reed, and thus cannot form the basis of a breach of contract claim for the reasons stated in Section III.J.2.

### 4.     *Failure to Provide Relevant Information for Misconduct Hearing*

Fourth, Plaintiff Reed alleges that Defendant Bucknell failed to provide him with information that he requested, which was relevant to his misconduct hearing.  (Id. ¶ 526(d).)  The

Student Handbook provides that Bucknell will provide an accused with a copy of the charges against him, along with supporting information, including the Public Safety department's report and witness statements.  (Doc. No. 15-12 at 27.)  The Student Handbook provides that Bucknell will turn this information over "when appropriate," which typically is not more than five days prior to a misconduct hearing.  The Bucknell Defendants argue that Plaintiffs' allegations establish that Bucknell complied with this requirement.  (Doc. No. 15 at 47.)  However, Plaintiffs have alleged that Defendant Bucknell withheld some relevant information that Plaintiff Reed's attorney requested.  (Doc. No. 1 ¶ 289.)  Accepting the allegations of Plaintiffs' complaint as true, Plaintiffs have alleged sufficient facts to support a finding that Defendant Bucknell breached the Student Handbook by failing to turn over some of the information that Plaintiff Reed requested.

> 5.    *K.S.'s Refusal to Testify and Plaintiff Reed's Disorderly Conduct Charge*

Plaintiff Reed next alleges several breaches of the Student Handbook based on K.S.'s refusal to testify at the misconduct hearing.  (Id. ¶¶ 526(e)-(g).)  Plaintiff Reed alleges that Defendant Bucknell breached the Student Handbook by not compelling K.S. to participate in the hearing, by failing to dismiss the charges against Plaintiff Reed based on her refusal to testify, and by finding Plaintiff Reed guilty of disorderly conduct despite K.S.'s refusal to particpate and "a total lack of evidence to support the finding."  (Id.)  The Student Handbook provides that the party who brings a charge must respond to questions posed by the accused and that refusal to respond may result in dismissal of the charges.  (Doc. No. 15-12 at 35-36.)  Notably, the Student Handbook does not provide that Defendant Bucknell must compel someone to testify, or that refusal to testify will automatically result in dismissal of charges.  Furthermore, Plaintiff Reed's

allegation that Defendant Bucknell violated the Student Handbook by charging him with disorderly conduct despite a "total lack of evidence" is not supported by the allegations of the complaint.  While the allegations of the complaint tend to call into question the veracity of K.S.'s allegations, they do not support a finding that there was a "total lack of evidence." Instead, Plaintiff admits that he was engaged in "play-fighting" with K.S. in the early hours of the morning, which could support a finding of disorderly conduct.  (Doc. No. 1 ¶¶ 23-28.)  Thus, Plaintiff Reed's allegations regarding K.S.'s refusal to testify and Plaintiff Reed's disorderly conduct charge do not support a cause of action for breach of contract.

### 6.    *Plaintiff Reed's Appeal*

Next, Plaintiff Reed alleges that Defendant Bucknell breached the Student Handbook by failing to grant Plaintiff Reed's appeals.  (Id. ¶ 526(h).)  The Student Handbook provides that a student can request a review of a conduct decision, and will be granted an appeal if material new evidence becomes available or if there was a substantial procedural error.  (Doc. No. 15-12 at 55.)  Plaintiffs allege, however, that Plaintiff Reed requested an appeal on October 19, 2010, and was granted an appellate hearing on October 20, 2010.  (Doc. No. 1 ¶¶ 409-410.)  At the appellate proceeding, the appeals board did not reverse Plaintiff Reed's misconduct charge.  (Id. ¶ 416.)  Thereafter, Plaintiff Reed requested another appeal and was granted a second appellate hearing where the original misconduct decision was upheld again.  (Id. ¶¶ 417-430.)  While the Student Handbook allows for an appeal in certain circumstances, the Student Handbook does not require that all appellate procedures result in reversal of misconduct decisions.  Thus, Plaintiff Reed's allegations regarding the denial of his appeal cannot form the basis of a breach of contract claim.

36

7.    *Failure to Maintain Records*

Last, Plaintiff Reed alleges that Defendant Bucknell breached the Student Handbook by failing to maintain a record of the misconduct hearing and the appellate proceedings.  (Id. ¶ 526(h).)  Plaintiffs' allegations regarding Bucknell's failure to maintain a record of the misconduct hearing or appellate procedures are insufficient to support a breach of contract claim, as Plaintiffs have not alleged what record keeping the Student Handbook actually requires or in what way Defendant Bucknell failed to meet those requirements.

While several of Plaintiff's allegations with respect to the Student Handbook are not sufficient to state a claim for breach of contract, Plaintiffs have alleged sufficient facts to support a finding that Defendant Bucknell breached the Student Handbook by failing to turn over some of the information that Plaintiff Reed requested.  Thus, the Court will not dismiss Plaintiff Reed's breach of contract claim at this stage.

**K.    Title IX (Count XI)**

In Count XI of Plaintiffs' complaint, Plaintiff Reed asserts a Title IX claim against Defendant Bucknell.  (Id. ¶¶ 529-536.)  Plaintiffs allege that Defendant Bucknell resolved K.S.'s allegations in violation of Title IX.  Specifically, Plaintiffs allege that virtually all cases of campus sexual assault involve an accused male, that Defendant Bucknell deals with allegations of sexual assault in a manner that "creates an environment in which the accused is so fundamentally denied due process as to be virtually assured of a finding of guilt," and that this "one-sided process deprives male students of educational opportunities on the basis of their sex." (Id. ¶¶ 532-533.)

Title IX provides in pertinent part that "[n]o person . . . shall, on the basis of sex, be

37

excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a). With respect to disciplinary proceedings, the Supreme Court has cautioned that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 648 (1999).

Here, Plaintiffs essentially allege that Plaintiff Reed was accused of sexual misconduct, that most of the people accused of sexual misconduct are males, and that the way in which Defendant Bucknell deals with sexual misconduct accusations is unfair. Thus, Plaintiffs assert that Defendant Bucknell deprives male students of educational opportunities on the basis of their sex. In their brief in opposition to the Bucknell Defendants' motion to dismiss, Plaintiffs argue that Plaintiff Reed was treated differently than K.S., by excusing her when she refused to testify and by never charging her with disorderly conduct, harassment, or assault. (Doc. No. 27 at 77.) However, this allegation is contrary to the facts pleaded in Plaintiffs' complaint. In their complaint, Plaintiffs allege that on October 7, 2010, K.S. was found responsible for disorderly conduct. (Doc. No. 1 ¶ 403.) Similarly, Plaintiff Reed was found responsible for disorderly conduct. (Id. ¶ 399.) Notably, Plaintiff Reed was found not responsible for sexual misconduct, physical assault, harassment, or freedom of movement. (Id. ¶ 398.) Accepting as true the allegations of the complaint, Plaintiffs have failed to state a claim for gender discrimination under Title IX. See generally Franchi v. New Hampton Schl., 656 F. Supp. 2d 252, 261 (2009) (dismissing a Title IX claim where student alleged that she was excluded on the basis of her eating disorder that affects primarily females). Accordingly, the Court will dismiss without prejudice Plaintiffs' Title IX claim.

**L.      Negligence (Count XII)**

Next, Plaintiff Reed asserts a negligence claim against Defendant Bucknell.  (Doc. No. 1

¶¶ 537-540.)  Plaintiffs allege that Defendant Bucknell owed Plaintiff Reed a duty to exercise

reasonable care, and failed to do so in "its interactions with Plaintiff [Reed], in its adoption of a

Student Handbook, and the Handbook's inclusive Code of Conduct, and in conducting its

investigation and adjudication of [Plaintiff Reed]'s disciplinary proceedings."  (Id. ¶ 538.)

Plaintiffs further allege that Defendant Bucknell breached its duty of care by "carelessly,

improperly, and negligently performing their assigned duties, miss-characterizing [sic] the truth,

ignoring clear evidence of [Plaintiff Reed]'s innocence [sic], facilitating a process that violated

the rights and other protected interest of Plaintiff [Reed] and removing [Plaintiff Reed] from

campus and leaving him alone at night in a park by himself."  (Id. ¶ 539.)  Plaintiffs allege that

these acts harmed Plaintiff Reed.

To state a claim for negligence, a plaintiff must allege: (1) a duty recognized by law

requiring the actor to conform to a certain standard of conduct; (2) failure by the actor to observe

this standard; (3) causation between the conduct and injury; and (4) actual damages.  Tomko v.

Marks, 602 A.2d 890, 892 (Pa. Super. Ct. 1992).  In Pennsylvania, the gist of the doctrine action

maintains the distinction between breach of contract claims and tort claims by precluding

recovery in tort in four situations:

> (1) where liability arises solely from the contractual relationship
> between the parties; (2) when the alleged duties breached were
> grounded in the contract itself; (3) where any liability stems from the
> contract; and (4) when the tort claim essentially duplicates the breach
> of contract claim or where the success of the tort claim is dependent
> on the success of the breach of contract claim.

Sarsfield v. Citimortgage, Inc., 707 F. Supp. 2d 546, 553 (M.D. Pa. 2010) (citing eToll v.

Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)).

Here, the Bucknell Defendants argue that Plaintiff Reed's negligence claim is barred by the gist of the action doctrine. (Doc. No. 15 at 54.) The Court agrees that to the extent that Plaintiff Reed's negligence claim merely asserts that Defendant Bucknell was negligent in adopting its Student Handbook and in dealing with the accusations against him, any liability would arise from the contractual relationship between Plaintiff Reed and Defendant Bucknell. Plaintiff Reed's negligence claim does, however, assert that Defendant Bucknell breached its duty of care beyond its contractual obligations. For example, Plaintiffs allege that Plaintiff Reed was taken to a park at night and left alone. Nonetheless, Plaintiffs have failed to properly plead the elements of causation and harm. Plaintiffs merely allege that as a direct result of Defendant Bucknell's negligence, Plaintiff Reed "has and will suffer financial losses, including but not limited to the loss of his educational payments made for the time frame that he was not permitted to attend class or reside on campus." (Doc. No. 1 ¶ 540.) Plaintiffs' allegations regarding the loss of his educational payments sound in contract, not tort. It is not clear what harm Plaintiff Reed alleges to have suffered outside of these educational payments or how any such harm was caused by the alleged negligence of Defendant Bucknell. Thus, Plaintiffs have failed to state a claim for negligence, and the Court will dismiss this claim without prejudice.

## M.   Negligent Hiring, Supervision, and Retention (Count XIII)

In Count XIII, Plaintiff Reed asserts a claim for negligent hiring, supervision, and retention against Defendant Bucknell. (Doc. No. 1 ¶¶ 541-544.) Plaintiffs allege that Defendant Bucknell had a duty to secure the services of qualified, well-trained employees, and to reasonably train, supervise, and retain them to assure proper investigations, disciplinary

hearings, appellate proceedings, and all other obligations set forth in the Student Handbook.  (Id. ¶ 542.)  Plaintiffs allege that Defendant Bucknell breached these duties, illustrating deliberate indifference, and thereby harming Plaintiff Reed.  (Id. ¶¶ 543-544.)

Pennsylvania law imposes a duty on employers to "exercise reasonable care in selecting, supervising and controlling employees." R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 697 (Pa. Super. Ct. 2000).  To impose liability for failure to exercise such care "it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee." Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 422 (Pa. 1968).

Here, Plaintiffs do not allege any facts to support an inference that Defendant Bucknell breached a duty in the areas of hiring, training, or supervising its employees.  Furthermore, when a supervising defendant concedes that an agency relationship existed with a co-defendant, dismissal of a negligent supervision or hiring claim is appropriate.  See Holben v. Midwest Emery Freight Sys., 525 F. Supp. 1224, 1224-25 (W.D. Pa. 1981).  Here, Defendant Bucknell concedes that an agency relationship existed between it and the other Bucknell Defendants. (Doc. No. 15 at 55.)  Thus, the Court will dismiss without prejudice Plaintiff Reed's negligent hiring, supervising, and retention claim.

## N.    Tortious Interference (Count XIV)

Next, Plaintiff Reed asserts a tortious interference with contract claim against Defendant Voci.  (Doc. No. 1 ¶¶ 545-551.)  Plaintiffs allege that Defendant Voci interfered with Plaintiff Reed's contract with Defendant Bucknell by "repeatedly meeting and conferencing with Bucknell University agents, servants and/or employees and demanding [Plaintiff Reed]'s

removal and, ultimately, expulsion from the school."  (<u>Id.</u> ¶ 547.)

To state a claim for tortious interference with a contract in Pennsylvania, a plaintiff must plead the following four elements: (1) the existence of a contractual relationship, or prospective contractual relationship, between the complainant and a third party; (2) purposeful action by the defendant, specifically intended to harm the existing relationship, or to prevent a prospective relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage.  <u>Pelagatti v. Cohen</u>, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987).  "Legal damage occurs through loss of a legal right to which one is entitled . . . ."  <u>CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.</u>, 357 F.3d 375 (3d Cir. 2004).

Here, Plaintiff Reed's relationship with Defendant Bucknell was contractual in nature. Plaintiffs have alleged that Defendant Voci willfully and maliciously acted to interfere with this contract by demanding Plaintiff Reed's removal from the school.  Plaintiffs have alleged that Defendant Voci was not privileged in doing so.  Finally, Plaintiffs have alleged that Plaintiff Reed was suspended as a result.  While Plaintiff Reed does not appear to have been expelled, he lost the right to live on campus and attend classes, both of which are rights to which Plaintiff Reed was entitled as a result of his contract with the school.  These allegations are sufficient to allow Plaintiff Reed's tortious interference claim to survive a motion to dismiss.

**O.      Civil Conspiracy to Commit Tortious Interference (Count XV)**

Plaintiff Reed also asserts a civil conspiracy to commit tortious interference claim against Defendants Bucknell and Voci.  (Doc. No. 1 ¶¶ 552-561.)  In support of this claim, Plaintiffs allege that Defendant Voci conspired with K.S. and her father to interfere with the contract between Defendant Bucknell and Plaintiff Reed, and that Defendant Voci demanded that

Plaintiff Reed not be permitted to attend the school.  (Id. ¶ 555-556.)  However, as in Plaintiffs'

other civil conspiracy claims, Plaintiffs have failed to sufficiently allege a combination or

agreement to interfere with Plaintiff Reed's contract.  Instead, Plaintiffs merely allege that

Defendant Voci demanded that Defendant Bucknell not permit Plaintiff Reed to finish his studies

at the school.  However, the allegations do not support a finding that an agreement was reached;

in fact, Plaintiff Reed was only suspended, while Defendant Voci allegedly demanded expulsion.

Accordingly, the Court will dismiss this claim without prejudice.

**P.     IIED (Plaintiff Reed) (Count XVI)**

Next, Plaintiff Reed asserts an IIED claim against Defendants Bucknell and Voci.  (Doc.

No. 1 ¶¶ 562-568.)  Plaintiffs allege that these Defendants embarrassed, humiliated, shocked, and

scarred Plaintiff Reed by outrageous, intentional, malicious and reckless conduct, consisting of

all of the conduct described throughout the complaint.  As a result, Plaintiffs allege that Plaintiff

Reed suffered "severe emotional distress, mental anguish, embarrassment and humiliation, all of

which are permanent in nature."  (Id. ¶ 568.)  Throughout the complaint, Plaintiffs allege that

Plaintiff Reed suffered "physical and psychological harm."

To state a claim for IIED, a plaintiff must prove that a defendant engaged in "conduct . . .

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  Cox v.

Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (citation omitted).  "As a preliminary

matter, it is for the court to determine if the defendant's conduct is so extreme as to permit

recovery."  Id. at 395; Johnson v. Caparelli, 625 A.2d 668, 671 (Pa. Super. Ct. 1993).  The

conduct must be intentional or reckless, and must cause extreme emotional distress.  Hoy v.

Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997).  Further, the extreme and outrageous

conduct must result in some physical injury.  Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super.

Ct. 1994) ("[I]t is clear that in Pennsylvania, in order to state a claim under which relief can be

granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege

physical injury.").

        Throughout Plaintiffs' complaint, which they incorporated by reference in their IIED

claim, Plaintiffs have listed a number of acts by employees of Defendant Bucknell and by

Defendant Voci.  Plaintiffs have alleged that Public Safety officers arrested Plaintiff Reed,

knowing that the accusations against him were false, and knowing that they lacked probable

cause to do so.  With respect to Defendant Voci, Plaintiffs have alleged that he referred to

Plaintiff Reed as a dangerous sexual offender, "the perpetrator of a sex crime," and an "attacker"

in a "sex crime," knowing that the statements were false.

        These types of allegations have survived a motion to dismiss in other cases in

Pennsylvania.  For example, in Walker v. North Wales Borough, the United States District Court

for the Eastern District of Pennsylvania declined to dismiss an IIED claim based on allegations

that an officer tackled a plaintiff, threw him to the ground in front of his neighbors, took him into

custody, and accused him of being drunk, without probable cause.  395 F. Supp. 2d 219, 232

(E.D. Pa. 2005).  In Banyas v. Lower Bucks Hospital, the Pennsylvania Superior Court held that

the defendants' conduct of intentionally fabricating records to suggest that the plaintiff had killed

a third party was sufficiently extreme and outrageous.  437 A.2d 1236 (Pa. Super. Ct. 1981).

False statements to the press have also been deemed sufficiently outrageous.  See Chuy v. Phila.

Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (defendant physician knowingly informed

44

the press of false information that plaintiff was suffering from fatal disease).

Plaintiffs will face a more exacting burden at later stages of litigation, but for purposes of this motion to dismiss all of these allegations must be taken at face value and in the light most favorable to Plaintiffs.  Plaintiffs' allegations that public safety officers arrested Plaintiff Reed, knowing that the information on which they based the arrest was false, and that Defendant Voci accused him of being a sexual offender, knowing the statement to be false, are sufficient to support a finding that Defendants' conduct was extreme and outrageous.

Plaintiffs have also alleged that Defendants Bucknell and Voci acted intentionally, maliciously, or recklessly and that Plaintiff suffered severe emotional distress and physical harm. At the summary judgment stage, or at trial, Plaintiffs will be required to produce objective proof of severe emotional distress.  "Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress."  Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989).  However, at the motion to dismiss stage, Plaintiffs' allegations regarding emotional distress and physical harm are sufficient.  Thus, the Court declines to dismiss Plaintiff Reed's IIED claim at this stage.

### Q.     Civil Conspiracy to Commit IIED (Count XVII)

Next, Plaintiff Reed asserts a civil conspiracy to commit IIED claim against Defendants Bucknell and Voci.  (Doc. No. 1 ¶¶ 569-574.)  Plaintiffs allege that Defendants Bucknell and Voci conspired to accomplish the unlawful act of IIED, with the common purpose of defaming and inflicting emotional distress on Plaintiff Reed.  For the same reason that all of Plaintiffs' other civil conspiracy claims fail, so too must this claim.  Again, Plaintiffs have failed to sufficiently allege a combination or agreement to inflict distress on Plaintiff Reed.  Thus, the

Court will dismiss this claim without prejudice.

### R.        IIED (Plaintiff Shelley) Count XVIII

In the final count of the complaint, Plaintiff Shelley asserts an IIED claim against

Defendants Bucknell and Voci.  (Id. ¶¶ 575-585.)  Plaintiffs allege that Defendants Bucknell and

Voci acted intentionally to humiliate, embarrass, shock, and scar Plaintiff Shelley, by making

false public statements and by taking actions that resulted in "her son being unjustly being [sic]

expelled from school and not being able to participate in the campus life he had looked forward

to." (Id. ¶ 578.)  Plaintiffs allege that, as a result of these acts, Plaintiff Shelley suffered physical

and psychological harm.

Plaintiffs do not allege that Defendants Bucknell or Voci directed their conduct at

Plaintiff Shelley; rather, Plaintiff Shelley's claim is based on conduct allegedly directed at

Plaintiff Reed.  The Supreme Court of Pennsylvania has explained that such a claim is only

recognized if the third-party plaintiff is present at the time of the extreme and outrageous

conduct.  Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000).  Plaintiffs have not

alleged that Plaintiff Shelley was present for any of the allegedly tortious conduct in this case.

Accordingly, her IIED claim will be dismissed without prejudice.

## IV.        CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part both motions.

(Doc. Nos. 11, 12.)  An order consistent with this memorandum follows.

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REED C. DEMPSEY and          :
SHELLEY DEMPSEY,             :          Civil Action No. 4:11-cv-1679
    Plaintiffs           :
                         :
v.                           :
                         :          (Chief Judge Kane)
BUCKNELL UNIVERSITY, et al., :
    Defendants            :

## ORDER

**NOW**, on this 3rd day of May 2012, **IT IS HEREBY ORDERED THAT** Defendants

motions to dismiss (Doc. Nos. 11, 12) are **GRANTED IN PART** and **DENIED IN PART** as

follows:

1.    Defendants Remley, Rishel, and Smyer are **DISMISSED WITH PREJUDICE** and **TERMINATED**;

2.    Plaintiff Reed's false arrest claim (Count I) is **DISMISSED WITHOUT PREJUDICE** as against Defendant Bucknell;

3.    Plaintiff Reed's malicious prosecution claim (Count II) is **DISMISSED WITHOUT PREJUDICE** as against Defendant Bucknell;

4.    Plaintiff Reed's civil conspiracy to commit false arrest claim (Count V) is **DISMISSED WITHOUT PREJUDICE**;

5.    Plaintiff Reed's civil conspiracy to commit malicious prosecution claim (Count VI) is **DISMISSED WITHOUT PREJUDICE**;

6.    Plaintiff Reed's defamation claim (Count VII) is **DISMISSED WITHOUT PREJUDICE** as against Defendant Bucknell;

7.    Plaintiff Reed's fraud claim (Count VIII) is **DISMISSED WITHOUT PREJUDICE** as against Defendants Holtzapple and Conrad;

8.    Plaintiff Reed's civil conspiracy to commit fraud claim (Count IX) is **DISMISSED WITHOUT PREJUDICE**;

9.      Plaintiff Reed's Title IX claim (Count XI) is **DISMISSED WITHOUT PREJUDICE**;

10.     Plaintiff Reed's negligence claim (Count XII) is **DISMISSED WITHOUT PREJUDICE**;

11.     Plaintiff Reed's negligent hiring, supervision, and retention claim (Count XIII) is **DISMISSED WITHOUT PREJUDICE**;

12.     Plaintiff Reed's civil conspiracy to commit tortious interference claim (Count XV) is **DISMISSED WITHOUT PREJUDICE**;

13.     Plaintiff Reed's civil conspiracy to commit IIED claim (Count XVII) is **DISMISSED WITHOUT PREJUDICE**;

14.     Plaintiff Shelley's IIED claim (Count XVIII) is **DISMISSED WITHOUT PREJUDICE**; and

15.     Defendants' motions are **DENIED** in all other respects.

16.     Plaintiffs are granted leave to amend their complaint within 15 days of the date of this order.

17.     A case management conference will be held on July 10, 2012 at 1:30 p.m. Counsel for Plaintiffs shall initiate the call.  The number for the Court is (717) 221-3990.


                              S/ Yvette Kane
                              Yvette Kane, Chief Judge
                              United States District Court
                              Middle District of Pennsylvania