# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

REED C. DEMPSEY,

            Plaintiff

    v.

BUCKNELL UNIVERSITY, et al.,

            Defendants.

CIVIL ACTION NO. **4:11-CV-1679**

(BRANN, J.)
(MEHALCHICK, M.J.)

## MEMORANDUM

In this action, Plaintiff Reed C. Dempsey has asserted various tort and contract claims against Bucknell University and several individual defendants concerning his arrest and criminal prosecution for an alleged sexual assault on another student, an internal University investigation into the incident, and related University student conduct proceedings. The parties have requested that the Court resolve a discovery dispute with respect to certain documents responsive to the Bucknell University Defendants' Rule 34 requests but withheld from production by Dempsey on the ground that they are protected from disclosure by the attorney-client privilege and by the work-product doctrine as codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.

## I. FACTUAL BACKGROUND

This action arises from an incident that occurred in the early morning hours of September 5, 2010, at a student dormitory on the campus of Bucknell University. Dempsey and another student, "K.S.," were involved in an altercation, the details of which are

disputed by the parties.[1] Later that day, a criminal investigation was initiated by the University's Department of Public Safety, based on allegations by K.S. that Dempsey had sexually assaulted her.

On September 6, 2013, based on information gathered in the incipient criminal investigation, the University suspended Dempsey. On September 7, 2013, a University public safety officer filed a criminal complaint against Dempsey in state court, and Dempsey was arraigned on state criminal charges that same day. On September 10, 2013, a second or superseding criminal complaint was filed against Dempsey, and he appeared in state court again that same day for an arraignment on the new charges.[2]

On September 14, 2013, K.S. filed student conduct charges against Dempsey, alleging sexual misconduct, physical assault, disorderly conduct, harassment, and interference with her freedom of movement. The next day, Dempsey filed similar student conduct charges against K.S. A student conduct hearing concerning the charges against both students was held over the course of three days on October 5, 6, and 7, 2010, at which both students were permitted to make opening and closing statements to the hearing panel and put on witnesses, who were questioned by the hearing panel. On October 7, 2010, the hearing panel found both students "responsible" for disorderly conduct, but "not responsible"

---

[1] This summary is limited to facts material to the instant discovery dispute. The Court previously discussed the alleged facts of the complaint in greater detail in *Dempsey v. Bucknell Univ.*, No. 4:11-CV-1679, 2012 WL 1569826, at *1–*3 (M.D. Pa. May 3, 2012).

[2] Neither side addresses the ultimate disposition of these criminal charges in their pleadings or motions papers, but they appear to have been dropped. *See* Joseph Deinlein, *Sex Case Against BU Student Dropped*, The Daily Item (Sunbury, Pa.), Nov. 2, 2010, http://dailyitem.com/0100_news/x1048514169/Sex-case-against-BU-student-dropped.

for all other charges.

Dempsey appealed the disorderly conduct finding, which was subsequently affirmed following an appeals board hearing on October 20, 2010. Dempsey further appealed the disorderly conduct finding, which was then affirmed following a hearing before the University Provost on December 14, 2010.

## II.   PROCEDURAL BACKGROUND

The instant discovery dispute concerns Dempsey's objection to producing several documents that, despite being responsive to the Bucknell University Defendants' Rule 34 requests, Dempsey contends are protected from disclosure by the attorney-client privilege and the work-product doctrine. The Bucknell University Defendants brought this dispute to the Court's attention by the filing of a letter request for a discovery conference on January 4, 2013. (Doc. 57). Dempsey filed a letter response on January 11, 2013. (Doc. 59). A telephonic discovery conference was held before Magistrate Judge Arbuckle on February 7, 2013. Following this discovery conference, supplemental letter briefs were submitted by the Bucknell University Defendants and Dempsey on February 12, 2013, and February 18, 2013, respectively. (Doc. 66; Doc. 70). The Bucknell University Defendants submitted their third letter to the Court addressing this dispute on February 19, 2013. (Doc. 71).

On February 27, 2013, pretrial management in this case was reassigned to Magistrate Judge Blewitt, who held a second telephonic discovery conference on March 18, 2013. As a result of the discovery conference, Dempsey was ordered to revise his privilege log to make it more specific, and to serve it on the Bucknell University Defendants. (Doc. 81). On April 1, 2013, Dempsey served his amended privilege log on the Bucknell University Defendants. Following service of the amended privilege log, the parties met and conferred to discuss the

objections further. Ultimately, the parties were able to resolve several of the objections and Dempsey produced certain of the disputed documents to the Bucknell University Defendants. (Doc. 82).

On May 2, 2013, Magistrate Judge Blewitt held another telephonic discovery conference to follow-up on this dispute. Dempsey was ordered to submit the allegedly privileged documents for *in camera* review, together with a copy of Dempsey's amended privilege log. Later that same day, Dempsey filed a copy of his amended privilege log with the Court. (Doc. 86). On May 6, 2013, Dempsey furnished the Court with a copy of the allegedly privileged documents (*see* Doc. 100), which included over three thousand (3,000) pages of notes, memoranda and emails for this Court's *in camera* review.

On June 12, 2013, one day before fact discovery was scheduled to close, the parties jointly moved to stay all discovery and other pretrial proceedings pending mediation and resolution of pending discovery disputes. (Doc. 91). The Court entered an Order granting the motion and staying the case later that same day. (Doc. 92).

On July 10, 2013, the parties advised the Court that mediation was not successful, and they requested a telephone status conference to discuss a new scheduling order. (Doc. 93). On July 15, 2013, pretrial management in this case was reassigned to the undersigned Magistrate Judge. A telephone status conference before the presiding District Judge is currently scheduled to take place on October 8, 2013. (*See* Doc. 98). The case remains stayed pending the status conference and the disposition of outstanding discovery disputes.

## III.  DISCUSSION

This dispute concerns Dempsey's objection to producing several documents on the grounds that they are protected by attorney-client privilege and the work-product doctrine.

## A. APPLICABLE STANDARDS

### 1. Attorney-Client Privilege

"Because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). For the attorney-client privilege to attach to a communication, "it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting *Restatement (Third) of the Law Governing Lawyers* § 68 (2000) [hereinafter, "*Restatement (3d) Lawyers*"]). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *Teleglobe*, 493 F.3d at 359 (citing *Restatement (3d) Lawyers* § 70). "A communication is only privileged if it is made 'in confidence.'" *Teleglobe*, 493 F.3d at 361 (citing *Restatement (3d) Lawyers* § 68). "[I]f persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." *Teleglobe*, 493 F.3d at 361.

"As a general matter, the privilege is not destroyed when a person other than the lawyer is present at a conversation between an attorney and his or her client if that person is needed to make the conference possible or to assist the attorney in providing legal services." *Miller v. Haulmark Transp. Sys.*, 104 F.R.D. 442, 445 (E.D. Pa. 1984) (privilege not waived by presence of insurance agent who arranged coverage and aided in preparation of answer); *see also Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 632–33 (E.D. Pa. 2011) (attorney-client privilege not waived when 18-year-old student-plaintiff consulted with her lawyer in the presence of her parents and a neighbor who facilitated her obtaining legal counsel);

*Harkobusic v. Gen. Am. Transp. Corp.*, 31 F.R.D. 264, 266 (W.D. Pa. 1962) (attorney-client privilege applied to communications between client's brother-in-law and various attorneys where brother-in-law was acting as client's agent in seeking legal advice). "These exceptions are consistent with the goal underlying the privilege because [this] type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse*, 951 F.2d at 1424.

### 2. Work-Product Doctrine

"The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by

or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent disputation," *see United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. *If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.*

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118 (emphasis added); *see also Restatement (Third) Lawyers* § 87 cmt. h ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or legal theories of an attorney,' is

afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work product-doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

Several of the documents at issue here involve notes or memoranda of witness interviews. An attorney's notes or memoranda reflecting his or her recollection or impression of witness interviews constitute opinion work product, regardless of the factual content of the notes or memoranda. *Linerboard*, 237 F.R.D. at 385–86. This is true also of notes or memoranda prepared by a private investigator or other agent of an attorney. *Linerboard*, 237 F.R.D. at 386; *see also In re Hughes*, 633 F.2d 282, 291 (3d Cir. 1980) (inquiry into investigative techniques of private investigator retained by defense counsel was shielded by work-product protection). Whether such material is discoverable typically turns on whether the witness is available for deposition. *See Linerboard*, 237 F.R.D. at 387 (availability of interviewed witness to be deposed undermined the necessity that a litigation adversary "invade the attorney's files"); *In re Grand Jury Investigation*, 599 F.2d 1224, 1232 (3d Cir. 1979) (permitting discovery of interview memoranda pertaining to a deceased witness, but denying discovery with respect to all other interview memoranda).

## B. PRELIMINARY FINDINGS

This discovery dispute is premised on the parties' differences of opinion with respect to a handful of recurring issues: (1) whether Reed Dempsey's parents, John and Shelley Dempsey, were agents of Dempsey or his attorneys with respect to criminal proceedings for the purpose of attorney-client privilege, such that they could participate in confidential attorney-client communications or receive disclosure of protected information without waiver of the privilege; (2) whether Dempsey's parents were also themselves clients of Attorney Stephen Becker with respect to non-criminal matters involving Bucknell University; (3) whether the University student conduct proceedings constituted "litigation," such that materials prepared by Dempsey and his representatives, including his attorneys and other agents (e.g., his parents), are shielded by the work-product doctrine; and (4) whether the disclosure of otherwise protected materials to Martin Ligare, a Bucknell University faculty member who served as Dempsey's student conduct hearing adviser, vitiated attorney-client privilege or waived work-product protection as to those materials.

As to the first issue, it is clear from the record before the Court that Dempsey's parents played two different roles in his legal defense, both of which permitted them to participate in or receive disclosure of confidential communications without waiver of the attorney-client privilege. From the earliest stages of this affair, Dempsey's parents played an essential role in securing legal representation for Dempsey. After the retention of legal counsel, Dempsey's parents actively assisted his attorneys in preparing a defense to criminal charges and, later, student conduct charges against Dempsey. In particular, the Court notes Attorney Stephen Becker's unrebutted affidavit (Doc. 70-1), in which Becker stated that, due to their professional backgrounds (John Dempsey is a forensic investigator and Shelley

Dempsey is a retired attorney) and their relationship and knowledge of their son, he enlisted the assistance of Dempsey's parents in gathering and analyzing information and helping to prepare Dempsey's defense. It is also abundantly clear from the Court's *in camera* review of the documents at issue that Dempsey's parents functioned just as Attorney Becker represented, operating in concert with and at the direction of defense counsel, and providing substantial assistance in preparation of the case. Whether they came upon these roles as paid professionals or as family member volunteers is immaterial.

As to the second issue, the evidence of record establishes that Dempsey's parents were also clients of Attorney Stephen Becker with respect to non-criminal matters involving Bucknell University. In his unrebutted affidavit, Attorney Becker stated unequivocally that he was engaged to represent Dempsey *and* his parents with respect to non-criminal matters involving Bucknell University. (Doc. 70-1). The Bucknell University Defendants disagree, but they have produced no evidence to refute Attorney Becker's sworn affidavit.

As to the third issue, the Bucknell University Defendants contend that materials prepared in connection with Dempsey's student conduct hearing and appeals are not subject to work-product protection because University student conduct proceedings are not "litigation" to which work-product protection may attach. In support, the Bucknell University Defendants cite this Court's characterization of the student conduct hearing process as "strictly an internal one" in a related case. (Doc. 57, at 2 (citing *Stefanowicz v. Bucknell Univ.*, No. 10-CV-2040, 2010 WL 3938243, at *3 (M.D. Pa. Oct. 5, 2010)). But this characterization in *Stefanowicz* is entirely inapposite, as the question in that matter was whether Bucknell University qualifies as a state actor for Fourteenth Amendment purposes. Here, the question is whether the University's student conduct hearing process is *adversarial*

in nature, and thus "litigation" to which work-product protection may attach. Based upon the record before the Court, it is clear that the student conduct hearing process was adversarial in nature, involving a neutral tribunal empowered to adjudicate serious student conduct charges against Dempsey, the opportunity for both sides to present evidence and witnesses, and the opportunity for both sides to present opening and closing statements to the tribunal. Whether it was a governmental proceeding or an internal one provided by a private university is immaterial.

Finally, as to the fourth issue, the Bucknell University Defendants contend that otherwise protected materials that were disclosed to Martin Ligare should be produced because this disclosure to an individual employed by the University constitutes a waiver of any attorney-client privilege or work-product protection that may otherwise attach to the materials. Ligare is a Bucknell University faculty member who served as Dempsey's Hearing Adviser, in which role he was charged with assisting Dempsey in preparing for his student conduct hearing and presenting his own remarks to the hearing officials. Although one might ordinarily infer a confidential relationship of some degree from this description, the University's Student Handbook makes clear that the charged student's relationship with his or her Hearing Adviser is not a privileged one, and that the Hearing Adviser is obligated to disclose to the University any information obtained from the student that supports the charges. *See Bucknell University Student Handbook 2013–14*, at 126, *available at* http://www.bucknell.edu/Documents/DeanOfStudents/StudentHandbook.pdf. Under these circumstances, it is clear that the disclosure of otherwise privileged or protected materials to Ligare constitutes waiver of attorney-client privilege and work-product protection with respect to that material.

### C. THE DISPUTED DOCUMENTS

The Court has reviewed each of the allegedly privileged documents *in camera*. Dempsey's objections shall be **SUSTAINED** in part and **OVERRULED** in part, for the reasons and in the manner stated hereinafter.

#### 1. Document No. 1

Document No. 1 is an undated table or chart analyzing witness statements and conflicting evidence, described in the privilege log as "Notes and chart for criminal case prepared with assistance of Attorney Becker and Attorney Simon." The listed authors are Dempsey's parents, John and Shelley Dempsey, and his attorneys, Stephen Becker and Ted Simon. Dempsey claims both attorney-client privilege and work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log, counsel of record's subsequent representations in correspondence, and the Court's review of the document *in camera*, the preparation of this document involved confidential communication between Dempsey's parents, acting as agents of his attorneys, and Dempsey's attorneys for the purpose of providing legal assistance to Dempsey. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey's parents acting as agents of his attorneys to assist in the defense of Dempsey against criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

#### 2. Document No. 6

Document No. 6 is a fax dated September 30, 2010, sent from Attorney Becker (via

his paralegal) to Attorney Simon and John Dempsey, transmitting a copy of Attorney Becker's handwritten witness interview notes dated September 8, 2010. Dempsey claims attorney-client privilege. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the Court's review of the document *in camera*, this document constitutes a confidential communication, made for the purpose of providing legal assistance to Dempsey, between his attorneys and his father, who was actively assisting in the preparation of Dempsey's legal defense as an agent of his attorneys.

### 3.   Documents No. 7, 8, 10, 13, and 26

Documents No. 7, 8, 10, 13, and 26 are draft letters from John and Shelley Dempsey, addressed to officials at Bucknell University, which were apparently never sent. The privilege log describes these documents as having been ghostwritten or co-authored by Attorney Becker. Dempsey claims attorney-client privilege. With respect to these documents, Dempsey's objections to production are **SUSTAINED**. Based on the document descriptions in the privilege log and the Court's review of the documents *in camera*, these drafts are privileged because they were "prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version." *SEPTA v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 258 (E.D. Pa. 2008).

### 4.   Document No. 9

Document No. 9 includes a partial draft letter from John Dempsey to the president of Bucknell University and notes for an anticipated meeting between the two. The document is undated but, based on its content, it was prepared in the period after Reed Dempsey's student conduct hearing, while his internal appeals remained pending at the University. The privilege log describes this document as having been ghostwritten or co-

authored by Attorney Becker. Dempsey claims attorney-client privilege and work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, the preparation of this document involved confidential communication between John Dempsey, acting as an agent of his son's attorney, and Attorney Becker for the purpose of providing legal assistance to Dempsey. *See SEPTA*, 254 F.R.D. at 258. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by his attorney to assist in the appeal of Dempsey's student conduct proceedings, which the Court has found to constitute litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 5. Documents No. 17, 30, 32, 50, and 53

Documents No. 17, 30, 32, 50, and 53 are notes prepared by or for Reed Dempsey outlining arguments, evidence, and litigation strategy with respect to his student conduct hearing and appeals. The privilege log describes these documents as having been prepared by Dempsey with the assistance of and in communication with his attorneys. Dempsey claims attorney-client privilege and work-product protection. With respect to these documents, Dempsey's objections to production are **SUSTAINED**. Based on the document descriptions in the privilege log and the Court's review of the documents *in camera*, the preparation of these documents involved confidential communication between Reed Dempsey and his attorneys for the purpose of providing legal assistance Dempsey. *See SEPTA*, 254 F.R.D. at 258. Moreover, upon examination, it is clear that the documents themselves constitute opinion work product, prepared by Dempsey and his attorneys to

assist him in student conduct proceedings, which the Court has found to constitute litigation in this case. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of these documents.

### 6. Document No. 18

Document No. 18 is a draft letter from John Dempsey, addressed to the general counsel of Bucknell University, which apparently was never sent. The privilege log describes this document as having been ghostwritten or co-authored by Attorney Becker. Dempsey claims attorney-client privilege and work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, the preparation of this document involved confidential communication between John Dempsey, acting as an agent of his son's attorney, and Attorney Becker for the purpose of providing legal assistance to Dempsey. *See SEPTA*, 254 F.R.D. at 258. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey's father acting as an agent of his attorney to assist him in student conduct proceedings, which the Court has found to constitute litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 7. Document No. 20

Document No. 20 is a letter dated August 4, 2011, to Ted Simon, one of Reed Dempsey's criminal defense attorneys, from Clifford Rieders, an attorney whom Simon had consulted regarding the latter's possible retention by the Dempsey family to bring a civil action related to Reed Dempsey's criminal prosecution and student conduct proceedings.

Dempsey claims attorney-client privilege. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. The attorney-client privilege protects communications between prospective clients and counsel as well as retained counsel. *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 n.1 (3d Cir. 1986). Whether the communication was between client and prospective attorney directly or through retained criminal defense counsel, acting as the client's agent for the purpose of seeking a civil litigation attorney, is immaterial. *See Harkobusic*, 31 F.R.D. at 266.

### 8. Documents No. 21 and 22

Documents No. 21 and 22 are pages of a "witness notebook" prepared by Attorney Simon summarizing and commenting on anticipated witness testimony with respect to Dempsey's upcoming student conduct hearing and pending criminal proceedings. Dempsey claims attorney-client privilege. Based on the Court's *in camera* review of related email correspondence, however, it is clear that these documents were disclosed to Martin Ligare, a faculty member of Bucknell University and Dempsey's student conduct hearing adviser. For this reason, Dempsey's claim to attorney-client privilege has been waived by disclosure of the document to a third party. With respect to these documents, Dempsey's objection to production shall be **OVERRULED** and Dempsey will be directed to produce the requested documents.

### 9. Document No. 36

Document No. 36 is an annotated transcript of a September 9, 2010, interview between a University public safety officer and K.S., with her attorney in attendance. According to the privilege log, the transcript was annotated by Dempsey's mother at the direction of Attorney Becker. No date for the annotations has been provided. Dempsey

claims attorney-client privilege and work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, the preparation of this document involved confidential communication between Dempsey's mother, acting as an agent of his attorneys, and Dempsey's attorneys for the purpose of providing legal assistance to Dempsey. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey's mother acting as an agent of his attorneys to assist in the defense of Dempsey against criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 10. Document No. 38

Document No. 38 is a draft letter from Reed Dempsey, addressed to a Bucknell University official, which was apparently never sent. The privilege log describes this document as having been ghostwritten or co-authored by Attorney Becker. Dempsey claims attorney-client privilege. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the documents *in camera*, this draft correspondence is privileged because it was "prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version." *SEPTA*, 254 F.R.D. at 258.

### 11. Documents No. 41 and 46

Documents No. 41 and 46 are undated strategy notes composed by Dempsey's mother and father, respectively. Dempsey claims attorney-client privilege and work-product

protection. With respect to these documents, Dempsey's objection to production shall be **SUSTAINED**. Based on the document descriptions in the privilege log and the Court's review of the document *in camera*, there is nothing to suggest that these documents themselves were communicated to Dempsey's counsel, nor that they contain references to any privileged communications within them. But, upon examination, it is clear that the documents themselves constitute opinion work product, prepared by Dempsey's parents acting as agents of his attorneys to assist in the defense of Dempsey against criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 12. Document No. 43

Document No. 43 is an undated transcript of an interview of K.S. by local police and University public safety officers, apparently conducted in the presence of another student and a University official. Portions of the transcript are highlighted. According to the privilege log, the highlighted portions are relevant to Dempsey's criminal case, and the highlighting was performed by Dempsey's father at the direction of Attorney Becker. Dempsey claims attorney-client privilege and work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, the preparation of this document involved confidential communication between Dempsey's father, acting as an agent of his attorneys, and Dempsey's attorneys for the purpose of providing legal assistance to Dempsey. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey's father acting as

an agent of his attorneys to assist in the defense of Dempsey against criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 13. Document No. 44

Document No. 44 is an October 6, 2010, email to Dempsey from his mother discussing strategy in his criminal case. Dempsey claims attorney-client privilege and work-product protection. Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, this email is privileged as it includes material prepared and previously communicated by Attorney Simon, and thus it "reflect[s] confidential communications between client and counsel . . . for the purpose of . . . providing legal services." *SEPTA*, 254 F.R.D. at 259. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey's mother acting as an agent of his attorneys to assist in the defense of Dempsey against criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 14. Document No. 52

Document No. 52 is an undated table or chart analyzing witness statements and conflicting evidence prepared by Dempsey's mother in connection with the criminal proceedings against him. Dempsey claims both attorney-client privilege and work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's

review of the document *in camera*, it is clear that this document constitutes opinion work product, prepared by Dempsey's mother acting as an agent of his attorneys to assist in the defense of Dempsey against criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 15. Document No. 54

Document No. 54 is a copy of a portion of Document No. 17, annotated by Chris Giovino, a private investigator who conducted a factual investigation in connection with Dempsey's legal defense. The annotations include comments and corrections to Dempsey's notes based on Giovino's recollection of witness interviews he personally conducted. Dempsey claims work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, it is clear that the annotations on this document constitute opinion work product, prepared by a private investigator acting as an agent of Dempsey's attorneys to assist in his defense to criminal charges, which unquestionably constitutes litigation. *See Hughes*, 633 F.3d at 291; *Linerboard*, 237 F.R.D. at 386. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 16. Documents No. 55 and 56

Documents No. 55 and 56 are notes prepared by or for Reed Dempsey outlining arguments, evidence, and litigation strategy with respect to his criminal defense. The privilege log describes these documents as having been prepared by Dempsey with the assistance of and in communication with his attorneys. Dempsey claims attorney-client

privilege. With respect to these documents, Dempsey's objections to production are **SUSTAINED**. Based on the document descriptions in the privilege log and the Court's review of the documents *in camera*, the preparation of these documents involved confidential communication between Reed Dempsey and his attorneys for the purpose of providing legal assistance to Dempsey. *See SEPTA*, 254 F.R.D. at 258.

### 17. Document No. 59

Document No. 59 is an undated timeline of events annotated by Dempsey's mother. An unannotated copy of the timeline has been produced in discovery. Dempsey claims attorney-client privilege and work-product protection with respect to his mother's annotations. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, there is nothing to suggest that the document itself was communicated to Dempsey's attorneys, nor that it contains references to any privileged communications within them. But, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey's mother acting as an agent of his attorneys to assist in Dempsey's defense to criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 18. Document No. 67

Document No. 67 is an undated set of notes prepared by Reed Dempsey, commenting on a recorded witness interview with respect to his criminal defense. The privilege log describes this document as having been prepared by Dempsey with the assistance of and in communication with his attorneys. Dempsey claims attorney-client

privilege and work-product protection. With respect to these documents, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, the preparation of this document involved confidential communication between Reed Dempsey and his attorneys for the purpose of providing legal assistance to Dempsey. *See SEPTA*, 254 F.R.D. at 258. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey to assist him in his defense against criminal charges, which unquestionably constitutes litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of these documents.

### 19. Document No. 68

Document No. 68 is an undated set of notes composed by Dempsey's mother suggesting questions to be asked of various witnesses to the events underlying the criminal and student conduct proceedings against her son. According to the privilege log, these notes were subsequently communicated to Attorney Becker. Dempsey claims attorney-client privilege and work-product protection. With respect to this document, Dempsey's objection to production shall be **SUSTAINED**. Based on the document description in the privilege log and the Court's review of the document *in camera*, the preparation of this document involved confidential communication between Dempsey's mother, acting as an agent of his attorneys, and Dempsey's attorneys for the purpose of providing legal assistance to Dempsey. Moreover, upon examination, it is clear that the document itself constitutes opinion work product, prepared by Dempsey's mother acting as an agent of his attorneys to assist in the defense of Dempsey against criminal charges, which unquestionably constitutes

litigation. The Bucknell University Defendants have failed to demonstrate any "rare and exceptional circumstances" that would justify disclosure of this document.

### 20. Document No. 69

Document No. 69 is an undated timeline of events as described in various statements given by K.S. during the course of the criminal and University investigations into her allegations against Dempsey. According to the privilege log, this document was authored by Dempsey's father. Most importantly, however, the document was disclosed to Martin Ligare, a faculty member of Bucknell University and Dempsey's student conduct hearing adviser. For this reason, Dempsey's claim to attorney-client privilege has been waived by disclosure of the document to a third party, and his claim to work-product privilege has been waived by disclosure of the document to a University employee obligated to disclose adverse information to the University. With respect to this document, Dempsey's objection to production shall be **OVERRULED** and Dempsey will be directed to produce the requested document.

### 21. Document No. 71

Document No. 71 is a collection of email messages exchanged between members of the Dempsey family, primarily concerning the criminal charges and student conduct proceedings against Reed Dempsey. For the most part, the participants in this exchange of email messages include Reed Dempsey, his parents, and his brothers, Matthew and Jameson (or "JJ") Dempsey. Most of these email messages are simply not privileged communications or protected work product, touching on non-legal or non-litigation issues only. Many are just chatter among family members and references to news articles or blog posts of interest in light of Reed Dempsey's experience. Several are transmittal messages

forwarding litigation documents without any comment at all—some of the attached documents [3] may themselves be protected by the attorney-client privilege or the work-product doctrine, but the transmittal messages are not. *See Guicci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 79 (S.D.N.Y. 2010) ("Transmittal documents themselves are not privileged unless they reveal the client's confidences."). Moreover, any attorney-client privilege is waived with respect to those email messages for which Matthew or Jameson Dempsey is the author or a recipient as there has been no showing whatsoever to support a finding that they are "privileged persons" to whom otherwise privileged communications may be disclosed without waiver. *See Teleglobe*, 493 F.3d at 361. Such disclosure, however, does not waive any applicable work-product protection. *See Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46. A number of the email messages involve third parties with no relationship whatsoever to the legal defense or representation of Reed Dempsey.

With respect to the email messages identified on **Attachment A** to this Memorandum Opinion, Dempsey's objection to production shall be **SUSTAINED** on the ground that each of these email messages, including any prior email messages appended thereto, constitutes or contains privileged attorney-client communications or protected work product. For the purpose of clarity, the Court notes that any applicable privilege or protection attaches with respect to the entire email string, and thus only the final or "top"

---

[3] Any non-email documents originally attached to these messages are not included with the collection of email messages presented to the Court in Document No. 71. Those for which privilege or protection is claimed and disputed, however, appear to have been presented *in camera* and ruled upon separately.

email in the string is described in Attachment A. *See Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 238, 240–41 (E.D. Pa. 2008).

With respect to the remainder of Document No. 71, Dempsey's objection to production shall be **OVERRULED**, and Dempsey shall be directed to produce the requested emails.

### 22. Document No. 72

Document No. 72 is a smaller collection of email messages exchanged between John Dempsey and Chris Giovino, a private investigator who conducted a factual investigation in connection with Dempsey's legal defense. In this role, Giovino was acting as an agent of Dempsey's attorneys to assist in his defense both to criminal charges and, later, University sexual misconduct charges. As a result, some of these emails between Dempsey and Giovino may contain information protected by the attorney-client privilege or the work-product doctrine. *See Hughes*, 633 F.3d at 291 (work product); *Linerboard*, 237 F.R.D. at 386 (work product); *Commonwealth v. Hutchinson*, 434 A.2d 740, 744 (Pa. Super. Ct. 1981) (attorney-client privilege). Several are transmittal messages—presented without their original, potentially privileged attachments—that do not themselves reveal any confidential information. *See Gucci*, 271 F.R.D. at 79. A number of these email messages have already been produced to the Bucknell University Defendants, and are so marked in the materials provided to the Court for *in camera* review.

With respect to the email messages identified on **Attachment B** to this Memorandum Opinion, Dempsey's objection to production shall be **SUSTAINED** on the ground that each of these email messages, including any prior email messages appended thereto, constitutes or contains privileged attorney-client communications or protected work

product. Once again, the Court notes that any applicable privilege or protection attaches with respect to the entire email string, and thus only the final or "top" email in the string is described in Attachment B. *See Rhoads Indus.*, 254 F.R.D. at 240–41.

With respect to the remainder of Document No. 72, Dempsey's objection to production shall be **OVERRULED**, and Dempsey shall be directed to produce the requested emails to the extent they have not already been produced.

### 23. Document No. 73

Document No. 73 is a significantly larger collection of email messages exchanged between the Dempseys and their legal counsel. For the most part, these messages are protected by attorney-client privilege or work-product doctrine. Some of the messages, however, are not shielded from disclosure because they involve non-confidential communication with authors or recipients who are not "privileged persons" or who are affiliated with the Dempseys' adversaries (e.g., Martin Ligare). *See Teleglobe*, 493 F.3d at 361; *Westinghouse*, 951 F.2d at 1428; *Miller*, 104 F.R.D. at 445–46. A few are merely transmittal messages, forwarding non-confidential email messages without any comment or discussion of confidential information. *See Gucci*, 271 F.R.D. at 79.

With respect to the email messages identified on **Attachment C** to this Memorandum Opinion, Dempsey's objection to production shall be **OVERRULED**, and Dempsey shall be directed to produce the requested emails identified in **Attachment C**.

With respect to the remainder of Document No. 73, Dempsey's objection to production shall be **SUSTAINED** on the ground that each of these email messages, including any prior email messages appended thereto, constitutes or contains privileged

attorney-client communications or protected work product. *See Rhoads Indus.*, 254 F.R.D. at 240–41.

IV.    CONCLUSION

For the foregoing reasons, Dempsey's objections to production of the documents described herein shall be **SUSTAINED** in part and **OVERRULED** in part. Dempsey shall be ordered to produce Documents No. 21, 22 ,and 69 and those portions of Documents No. 71, 72, and 73 that the Court has found are not shielded from disclosure by attorney-client privilege or the work-product doctrine.

An appropriate Order follows.

BY THE COURT:

Dated: October 7, 2013                    *s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **United States Magistrate Judge**

Privileged/Protected E-mail Messages from Document No. 71
Objections to these items are **SUSTAINED** and the following are not subject to production.

| Author | Recipients | Date | Time | Privilege |
|---|---|---|---|---|
| Jameson Dempsey | John Dempsey | 9/8/2010 | 12:24:40 a.m. | work product |
| John Dempsey | Jameson Dempsey | 9/8/2010 | 9:39:13 a.m. | work product |
| Jameson Dempsey | John Dempsey | 9/8/2010 | 10:01:09 a.m. | work product |
| John Dempsey | Jameson Dempsey | 9/8/2010 | 10:02:20 a.m. | work product |
| Jameson Dempsey | John Dempsey | 9/8/2010 | 10:03:27 a.m. | work product |
| Jameson Dempsey | John Dempsey | 9/8/2010 | 2:53:34 p.m. | work product |
| Jameson Dempsey | John Dempsey | 9/14/2010 | 10:01:44 a.m. | work product |
| John Dempsey | Jameson Dempsey | 9/14/2010 | 10:06:44 a.m. | work product |
| Jameson Dempsey | John Dempsey | 9/15/2010 | 7:48:19 p.m. | work product |
| John Dempsey | Jameson Dempsey | 9/17/2010 | 3:50:19 a.m. | work product |
| John Dempsey | Jameson Dempsey | 9/17/2010 | 3:54:08 a.m. | work product |
| John Dempsey | Jameson Dempsey | 9/17/2010 | 7:23:25 a.m. | work product |
| Jameson Dempsey | John Dempsey | 9/17/2010 | 10:24:13 a.m. | work product |
| Shelley Dempsey | John Dempsey | 9/22/2010 | 8:13:05 a.m. | work product |
| John Dempsey | Shelley Dempsey | 9/28/2010 | 10:29:12 p.m. | work product |
| Shelley Dempsey | John Dempsey | 9/29/2010 | 4:05:42 p.m. | work product |
| John Dempsey | Shelley Dempsey, Reed Dempsey | 10/4/2010 | 6:59:33 a.m. | attorney-client/work-product |
| John Dempsey | Shelley Dempsey, Reed Dempsey | 10/4/2010 | 11:23:39 a.m. | attorney-client |
| Shelley Dempsey | John Dempsey | 10/6/2010 | 1:12:58 a.m. | work product |
| Reed Dempsey | John Dempsey | 10/7/2010 | 12:46:19 a.m. | attorney-client/work-product |
| Shelley Dempsey | John Dempsey | 10/12/2010 | 11:22:34 a.m. | work product |
| Shelley Dempsey | John Dempsey | 10/26/2010 | 5:54:56 p.m. | work product |
| Shelley Dempsey | John Dempsey | 10/26/2010 | 6:01:33 p.m. | work product |
| Shelley Dempsey | John Dempsey | 10/26/2010 | 6:01:58 p.m. | work product |
| Shelley Dempsey | John Dempsey | 10/26/2010 | 6:02:34 p.m. | work product |
| Shelley Dempsey | John Dempsey | 10/26/2010 | 8:31:30 p.m. | work product |
| John Dempsey | Shelley Dempsey, Reed Dempsey, Jameson Dempsey | 10/27/2010 | 1:25:14 a.m. | work product |
| Jameson Dempsey | John Dempsey | 10/27/2010 | 8:00:18 a.m. | work product |
| John Dempsey | Jameson Dempsey | 10/27/2010 | 8:57:11 a.m. | work product |

| Author | Recipients | Date | Time | Privilege |
|---|---|---|---|---|
| Shelley Dempsey | John Dempsey | 10/27/2010 | 9:27:31 a.m. | work product |
| John Dempsey | Shelley Dempsey | 10/27/2010 | 9:56:00 a.m. | work product |
| Shelley Dempsey | John Dempsey | 10/27/2010 | 10:00:16 a.m. | work product |
| Shelley Dempsey | John Dempsey | 10/27/2010 | 10:30:41 a.m. | work product |
| Reed Dempsey | John Dempsey, Shelley Dempsey, Jameson Dempsey | 10/27/2010 | 11:48:40 a.m. | work product |
| Shelley Dempsey | John Dempsey | 10/27/2010 | 12:00:54 p.m. | attorney-client/work-product |
| Shelley Dempsey | John Dempsey | 10/27/2010 | 12:01:55 p.m. | work product |
| Jameson Dempsey | Reed Dempsey, John Dempsey, Shelley Dempsey | 10/27/2010 | 1:07:39 p.m. | work product |
| Shelley Dempsey | John Dempsey, Jameson Dempsey | 10/28/2010 | 11:00:00 a.m. | work product |
| John Dempsey | Shelley Dempsey, Jameson Dempsey | 10/28/2010 | 11:06:01 a.m. | work product |
| John Dempsey | Shelley Dempsey | 10/28/2010 | 3:07:10 p.m. | work product |
| Shelley Dempsey | John Dempsey | 10/28/2010 | 5:39:18 p.m. | work product |
| John Dempsey | Shelley Dempsey | 10/28/2010 | 6:10:24 p.m. | work product |
| John Dempsey | Reed Dempsey | 11/2/2010 | 12:17:58 a.m. | attorney-client/work-product |
| Jameson Dempsey | John Dempsey | 11/28/2010 | 10:05:19 a.m. | work product |
| John Dempsey | Jameson Dempsey | 11/28/2010 | 10:10:15 a.m. | work product |
| Jameson Dempsey | John Dempsey | 11/28/2010 | 10:51:31 a.m. | work product |
| Jameson Dempsey | John Dempsey | 11/28/2010 | 10:54:01 a.m. | work product |
| John Dempsey | Jameson Dempsey | 11/28/2010 | 6:35:10 p.m. | work product |
| Jameson Dempsey | John Dempsey | 11/28/2010 | 6:40:49 p.m. | work product |
| John Dempsey | Jameson Dempsey | 11/28/2010 | 6:46:34 p.m. | work product |
| Jameson Dempsey | John Dempsey | 11/28/2010 | 7:04:26 p.m. | work product |
| Shelley Dempsey | John Dempsey | 11/28/2010 | 7:23:34 p.m. | attorney-client/work product |

Attachment B
Privileged/Protected E-mail Messages from Document No. 72
Objections to these items are **SUSTAINED** and the following are not subject to production.

| Author | Recipients | Date | Time | Privilege |
|---|---|---|---|---|
| Chris Giovino | John Dempsey | 9/17/2010 | 9:35:29 p.m. | attorney-client/work product |
| John Dempsey | Chris Giovino | 9/18/2010 | 8:43:23 a.m. | attorney-client/work product |

Non-Privileged E-mail Messages from Document No. 73 to be Produced to Defendants
Objections to these items are **OVERRULED** and the following must be produced in accordance with this Court's Order.

| Author | Recipients | Date | Time |
|---|---|---|---|
| Reed Dempsey | Stephen Becker, John Dempsey, Ted Simon | 9/10/2010 | 6:13:43 p.m. |
| Reed Dempsey | Kari Conrad, Stephen Becker, John Dempsey | 9/10/2010 | 7:22:07 p.m. |
| John Dempsey | Gay Huey Evans | 9/14/2010 | 3:38:24 a.m. |
| Gay Huey Evans | John Dempsey | 9/14/2010 | 5:00 a.m. |
| John Dempsey | Gay Huey Evans | 9/14/2010 | 1:39:17 p.m. |
| Gay Huey Evans | John Dempsey | 9/14/2010 | 9:34 a.m. |
| John Dempsey | Shelley Dempsey, Jameson Dempsey | 9/17/2010 | 5:46:57 p.m. |
| Stephen Becker | Reed Dempsey, Ted Simon, Martin Ligare, John Dempsey | 9/23/2010 | 3:10:54 p.m. |
| Stephen Becker | Ted Simon, Reed Dempsey, John Dempsey, Martin Ligare | 9/28/2010 | 5:32:27 p.m. |
| Stephen Becker | Kari Conrad, Reed Dempsey, Martin Ligare | 9/29/2010 | 11:56:45 a.m. |
| Stephen Becker | Reed Dempsey, Martin Ligare | 9/29/2010 | 4:15:16 p.m. |
| John Dempsey | Shelley Dempsey | 9/29/2010 | 4:16:07 p.m. |
| Stephen Becker | Wayne Bromfield, Reed Dempsey, Martin Ligare | 9/29/2010 | 10:44:51 p.m. |
| John Dempsey | Shelley Dempsey | 9/30/2010 | 6:33:16 a.m. |
| Stephen Becker | Ted Simon, Reed Dempsey, John Dempsey, Shelley Dempsey, Martin Ligare | 9/30/2010 | 11:35:55 a.m. |
| Stephen Becker | Kari Conrad, Reed Dempsey, Martin Ligare | 9/30/2010 | 7:37:28 p.m. |
| Stephen Becker | Martin Ligare, Reed Dempsey, John Dempsey, Shelley Dempsey | 10/1/2010 | 4:17:22 p.m. |
| Stephen Becker | Martin Ligare, Reed Dempsey, John Dempsey, Shelley Dempsey, Ted Simon | 10/1/2010 | 4:21:14 p.m. |
| Stephen Becker | Kari Conrad, Martin Ligare, Reed Dempsey | 10/2/2010 | 11:20:35 a.m. |
| John Dempsey | Stephen Becker, Reed Dempsey, Martin Ligare, Shelley Dempsey, Ted Simon | 10/3/2010 | 9:13:18 p.m. |
| Stephen Becker | Ted Simon, Reed Dempsey, Martin Ligare, John Dempsey, Shelley Dempsey | 10/4/2010 | 3:05:00 p.m. |
| Stephen Becker | Ted Simon, Reed Dempsey, John Dempsey, Shelley Dempsey, Martin Ligare | 10/4/2010 | 4:50:36 p.m. |
| Stephen Becker | Ted Simon, Reed Dempsey, Martin Ligare, John Dempsey, Shelley Dempsey | 10/4/2010 | 6:13:49 p.m. |
| Ted Simon | Stephen Becker, Shelley Dempsey, Martin Ligare, Reed Dempsey, John | 10/4/2010 | 9:41:52 p.m. |

| Author | Recipients | Date | Time |
|---|---|---|---|
| | Dempsey | | |
| Shelley Dempsey | Ted Simon, Stephen Becker, Martin Ligare, Reed Dempsey, John Dempsey | 10/5/2010 | 7:53:26 a.m. |
| Martin Ligare | Shelley Dempsey, Ted Simon, Stephen Becker, Reed Dempsey, John Dempsey | 10/5/2010 | 8:43:36 a.m. |
| Stephen Becker | Michael Lowenstein, Ted Simon, John Ellison, John Dempsey, Jeremy Feinstein, Reed Dempsey, Martin Ligare, Shelley Dempsey | 10/5/2010 | 10:29:44 a.m. |
| Ted Simon | John Dempsey, Stephen Becker, Shelley Dempsey, Reed Dempsey, Martin Ligare | 10/6/2010 | 10:25:58 a.m. |
| Ted Simon | John Dempsey, Stephen Becker, Shelley Dempsey, Reed Dempsey, Martin Ligare | 10/6/2010 | 10:36:42 a.m. |
| Ted Simon | John Dempsey, Stephen Becker, Shelley Dempsey, Reed Dempsey, Martin Ligare | 10/6/2010 | 10:53:15 a.m. |
| Shelley Dempsey | Ted Simon, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/6/2010 | 12:05:38 p.m. |
| Shelley Dempsey | Ted Simon, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/6/2010 | 1:43:16 p.m. |
| Ted Simon | Shelley Dempsey, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/6/2010 | 2:03:52 p.m. |
| Shelley Dempsey | Ted Simon, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/7/2010 | 9:45:20 a.m. |
| Ted Simon | Shelley Dempsey, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/7/2010 | 10:21:17 a.m. |
| Ted Simon | Shelley Dempsey, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/7/2010 | 11:09:01 a.m. |
| Shelley Dempsey | Ted Simon, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/7/2010 | 11:09:34 a.m. |
| Ted Simon | Shelley Dempsey, John Dempsey, Stephen Becker, Reed Dempsey, Martin Ligare | 10/7/2010 | 11:23:45 a.m. |
| Reed Dempsey | Kari Conrad, Stephen Becker, Martin Ligare | 10/7/2010 | 11:46:40 a.m. |
| Stephen Becker | Michael Lowenstein, John Ellison, Jeremy Feinstein, Martin Ligare, Ted Simon, John Dempsey, Reed Dempsey, Shelley Dempsey | 10/7/2010 | 11:46:46 p.m. |
| Ted Simon | Stephen Becker, Michael Lowestein, John Ellison, Jeremy Feinstein, Martin Ligare, John Dempsey, Reed Dempsey, Shelley Dempsey | 10/8/2010 | 1:08:38 a.m. |
| John Dempsey | Martin Ligare, Shelley Dempsey, Stephen Becker | 10/8/2010 | 8:10:23 p.m. |
| Shelley Dempsey | John Dempsey, Martin Ligare, Stephen Becker | 10/8/2010 | 8:24:22 p.m. |
| Martin Ligare | John Dempsey, Shelley Dempsey, Stephen Becker | 10/9/2010 | 9:27:00 a.m. |
| Reed Dempsey | Kari Conrad, Stephen Becker | 10/14/2010 | 10:48:10 a.m. |
| Reed Dempsey | Stephen Becker, John Dempsey, Shelley Dempsey | 10/19/2010 | 3:40:30 p.m. |

| Author | Recipients | Date | Time |
|---|---|---|---|
| Stephen Becker | Ted Simon, Shelley Dempsey, John Dempsey | 10/27/2010 | 11:15:21 p.m. |
| Shelley Dempsey | Stephen Becker, Ted Simon, John Dempsey, Martin Ligare | 10/30/2010 | 1:40:25 p.m. |
| Stephen Becker | Shelley Dempsey, Ted Simon, John Dempsey, Martin Ligare | 10/30/2010 | 1:53:41 p.m. |
| Martin Ligare | Reed Dempsey, Shelley Dempsey, John Dempsey, Ted Simon, Stephen Becker | 10/30/2010 | 2:01:47 p.m. |
| John Dempsey | Matt Mason | 11/9/2010 | 3:08:25 p.m. |
| John Dempsey | Stephen Becker, Ted Simon | 11/9/2010 | 4:27:28 p.m. |
| Stephen Becker | Reed Dempsey, Ted Simon, John Dempsey, Shelley Dempsey, Martin Ligare | 12/1/2010 | 12:11:31 p.m. |
| Reed Dempsey | Stephen Becker, Ted Simon, Shelley Dempsey, John Dempsey | 12/2/2010 | 10:23:31 a.m. |
| John Dempsey | Jameson Dempsey | 12/2/2010 | 10:42:31 a.m. |
| Stephen Becker | Reed Dempsey, Martin Ligare, Ted Simon, Shelley Dempsey, John Dempsey | 12/3/2010 | 11:25:18 p.m. |
| Reed Dempsey | Stephen Becker, John Dempsey | 12/3/2010 | 6:37:12 p.m. |
| John Dempsey | Jameson Dempsey | 12/3/2010 | 6:50:30 p.m. |
| John Dempsey | Martin Ligare, Stephen Becker, Reed Dempsey, Shelley Dempsey | 12/6/2010 | 9:49:33 a.m. |
| Shelley Dempsey | Martin Ligare | 12/7/2010 | 10:14:11 a.m. |
| Shelley Dempsey | John Dempsey | 8/21/2011 | 4:42:11 p.m. |
| John Dempsey | Jameson Dempsey, Matthew Dempsey, Connor Dempsey, Linda Roberto, Barbara Dempsey | 9/7/2011 | 3:23:07 p.m. |
| John Dempsey | Jameson Dempsey | 2/10/2012 | 9:43:38 a.m. |