# IN THE UNITED STATE DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REED C. DEMPSEY,** | : NO:  4:11-CV-1679 |
| Plaintiff | : |
| | : JUDGE BRANN |
| v. | : |
| | : |
| **BUCKNELL UNIVERSITY,** *et al.* | : CIVIL ACTION - LAW |
| Defendants | : JURY TRIAL DEMANDED |

### PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS <u>MOTION FOR SUMMARY JUDGMENT</u>

**BOYLE LITIGATION**

**Dennis E. Boyle, Esquire**
Supreme Court I.D. No. 49618

**Megan E. Schanbacher, Esquire**
Supreme Court I.D. No. 306958
4660 Trindle Road, Suite 102
Camp Hill, PA  17011
Phone:  (717) 737-2430
Fax:  (717) 737-2452
Email: deboyle@boylelitigation.com
         mschanbacher@boylelitigation.com

Counsel For:  Plaintiffs

Dated:  June 26, 2014

**AND NOW** comes Reed Dempsey, by and through his undersigned counsel, to submit this statement of material facts in support of his contemporaneously filed Briefs in Opposition to Defendant Voci's and the Bucknell Defendants' Motion for Summary Judgment, as required by L.R. 56.1:

1. At approximately 2:00 a.m. on Sunday, September 5, 2010, Kelly Stefanowicz and Reed Dempsey engaged in "play-fighting". Bucknell Defendants' Exh. S p. 4-6.

2. Kelly and Reed began "play-fighting" in Kelly's room, where Raina Masand, Morgan Slade, and Demitri Carahalios were present. (*Id*.).

3. Kelly and Reed continued "play-fighting" in Reed's room while Wade Payson-Denney, Gabriella Ors, and Greg Fast were present. Exhibit "A", pp. 54-56.

4. At some point during the early morning hours of September 5, 2010, Kelly and Reed were alone in Reed's room. (*Id*. at 62).

5. There is no confirmed time as to how long Kelly and Reed were alone.[1]

---

[1] The amount of time that Reed and Kelly were in Reed's room alone is unconfirmed because numerous people recalled conflicting time intervals. In Reed's deposition, Reed stated that he and Kelly were alone in his room "[s]omewhere between two and four" minutes. Exhibit "A" at 112:1-18. In the "Incident Report", Officer Ulmer claimed that Reed told him that they were in the room alone for "about a minute". Bucknell Defendants' Exh. B, p. 6, item 5. Kelly claimed that her and Reed were alone in his room for about "five to seven minutes". Bucknell Defendants'

6.   During the time frame when Kelly and Reed were alone in the room, Greg Fast returned to the room and saw Kelly on top of Reed on the futon. Exhibit "A", p. 56; *see also* Bucknell Defendants' Exh. B, p. 23, item 46.

7.   While alone in Reed's room, Reed testified that they were "talking and joking around, being silly about the night." Exhibit "A", p. 62.

8.   Reed testified, that while alone in his room, "[Kelly] had her hand on [Reed's] hands . . . kind of hands on [his] wrists, pushing [] [him] down against the futon." (*Id*. at 63).

9.   Reed testified that he tried to move Kelly off of him. *Id*. at 65.

10.   Reed testified, as he attempted to move Kelly off of him, her leg knocked his Brita water pitcher off his coffee table, and spilled it "all over the ground." *Id*..

11.   Reed testified that at his request, Kelly left his room. *Id*. at pp. 65-66.

12.   After Reed cleaned up the spilled water, he went back out into the hallway and conversed with some of his hall mates, one of which included Kelly. *Id*. at pp. 66-67.

---

Exh. S, p. 10.  Mr. Fast stated that after he left Reed's room, Reed and Kelly came into the hallway after about "10-minutes give-or-take". Bucknell Defendants' Exh. J, p. 1. However, earlier in Mr. Fast's statement, he eluded to the fact that his sense of time "is far from accurate". *Id*.

13. Reed testified that while conversing in the hallway, Kelly "tried to incite again, this time a little more forcefully . . . [by] pok[ing] [Reed's] arm or kind of shov[ing] him." *Id*. at 68.

14. Reed testified he poked her back, "she pushed a lot harder, and [Reed] actually . . . ran down the hall, thinking [he] could kind of get away from it." *Id*.

15. Reed testified that Kelly chased after him and began pushing Reed harder and then "hit [Reed] in the genitals." *Id*. at 69.

16. When Kelly tried to hit Reed again, Reed gave Kelly a "bear hug" in an effort to prevent her from striking him. Kelly flailed her arms, causing them to fall to the floor in the hallway. Bucknell Defendants' Exh. B, p. 7, item 5.

17. The fall resulted in rug burns on Kelly's face and shoulder. *Id*.

18. R.A. Michael Sena and others students observed the fall and saw Kelly's brush burns once she got up. Exhibit "J", Statement of Michael Sena.

19. R.A. Sena informed BUPS that as Kelly got up, she ran over to Reed, slapped him, and called him "pussy lips." *Id*.

20. R.A. Sena informed BUPS that he escorted Kelly back to her room, but then Kelly left her room and jokingly shouted "[n]obody makes me bleed my own blood!" *Id*.

21. Also at this time, Kelly shouted that "Reed [is] a 'Pussy Lips' and that he could suck [her] 'Big fat black cock.'" *Id*.

22. When R.A. Sena tried to get more information from Reed and Kelly, Kelly "slapped Reed hard on the face." *Id*.

23. Kelly made R.A. Sena promise not to fill out a report. *Id*.

24. Kelly asked R.A. Sena to "shake her hand and promise not to fill out a report" "because she had a game today". *Id*.

25. As R.A. Sena spoke with Reed, Reed apologized about the rug burn, but told him that "this had been going on for a year or two, but that they were just playing around and neither of them had sustained any physical injury until tonight." *Id*.

26. Reed texted Kelly about her rug burn. Bucknell Defendants' Exh. F.

27. Later that morning, Kelly boarded a bus to Princeton University with her field hockey team. Bucknell Defendants' Exh. K, p. 1.

28. Kelly told her teammates that the rug burn marks were caused by her "hit[ting] [her] head on [her] ceiling." Exhibit "B" at 21:35-21:38.

29. Coach Cook noticed Kelly's visible marks and talked with her. Bucknell Defendants' Exh. K.

30. Kelly played in the collegiate field hockey game at Princeton University following the incident that occurred during the early morning hours of September 5, 2010. Bucknell Defendants' Exh. S, p. 14.

31. Kelly's father, Mr. Stefanowicz, was at the game and took photographs of Kelly after the game on September 5, 2010. *Id*.

32. Kelly rode the team bus back to Bucknell University with her teammates and spoke with Dean Badal on the phone during the ride. Bucknell Defendants' Exh. K.

33. Dean Badal told Kelly to go to the Bucknell Department of Public Safety and the Lewisburg Police. *Id*.

34. At approximately 8:00 p.m. on September 5, 2010, Kelly, accompanied by Dean Badal and one of her teammates, was interviewed by Officer Holtzapple, Officer Fisher, Officer Ulmer, and Dean Badal. Bucknell Defendants' Exh. B, p. 5, item 2.

35. This interview was recorded. *Id*.

36. During this recorded interview session, Officer Holtzapple told Kelly that Reed "was born this way." Exhibit "B" at 19:16 – 19:18.

37. During this recorded interview session, Officer Holtzapple told Kelly that she "could have save somebody's life in the future." *Id*. at 19:56 – 19:58.

38. During this recorded interview session, Officer Fisher stated that Reed "obviously has a problem." *Id*. at 20:06 – 20:07.

39. At the conclusion of the interview, Kelly, after telling R.A. Sena that she did not want to file a report, stated that she wanted "to proceed with external charges for this assault." Bucknell Defendants' Exh. B, p. 6, item 2.

40. After the interview, Kelly went to Evangelical Hospital to be examined by a SANE nurse and for photographs and treatment. *Id*. at p. 6, item 3.

41. Evangelical Hospital staff diagnosed Kelly with scrapes and bruises and sent her home the same day. There was no evidence of sexual assault or attempted sexual assault. Exhibit "L", Evangelical Hospital Report, p. 2.

42. At approximately 9:30 p.m. on September 5, 2010, Officer Ulmer met Reed in front of Smith Hall. Bucknell Defendants' Exh. B, p. 7, item 4.

43. Officer Ulmer told Reed that "he was a suspect in an ongoing criminal investigation". *Id*.

44. Officer Ulmer instructed Reed not to have any contact with Kelly, otherwise "it could be considered 'Intimidation of a Witness' and he could be charged accordingly." *Id*.

45. That same night, Reed went to BUPS, at the request of BUPS to be interviewed. At approximately 11:00 p.m. on September 5, 2010, Officer Ulmer and Detective Fisher read Reed his *Miranda* rights and interviewed Reed. *Id*. at 7, item 5.

46. This interview was not recorded. *Id*.; *see also* Exhibit "C," Excerpts from Deposition Transcript of Officer Robert Ulmer p. 62:15-24.

47. Reed submitted a written statement before beginning the interview. Bucknell Defendants' Exh. B, p. 7, item 5.

48. During this interview, Reed provided Officer Ulmer and Detective Fisher with the names of multiple witnesses who observed the incident that occurred between him and Kelly during the early morning hours of September 5, 2010. *Id*.

49. Between September 5, 2010 and September 6, 2010, BUPS officers received statements from the following witnesses: (1) Wade Payson-Denney, (2)

Gregory Fast, (3) Andrew Watts, (4) Kristen Brundage, (5) Morgan Slade, (6) Demitri Carahalios, (7) Gabriela Ors, and (8) Michael Sena. (*Id.* at pp. 8-11, items 6-11).[2]

50. Among other exculpatory information provided throughout these statements, these statements explicitly included the following information:

    a. Kelly and Reed had jokingly wrestled "many times before and it didn't seem like anything out of the ordinary." Exhibit "D," Statement of Wade Payson-Denney, p. 1;

    b. "Reed and Kelly Stefanowicz [were] playfully wrestling on the futon." Bucknell Defendants' Exh. J, p. 1.

    c. "Reed and Kelly assured [R.A. Michael Sena] that it was a friendly scuffle." *Id*.

    d. Playful wrestling between Reed and Kelly was "not uncommon in their relationship." Exhibit "E," Statement of Andrew Watts p. 1.

    e. Kelly told Andrew Watts that "she could have walked away before anything got out of hand." Id.

---

[2] Not all witness statements were listed on the BUPS Incident Report; however, by reviewing each statement individually, it is a fact that all witness statements listed in paragraph 49 were written and received between September 5, 2010 and September 6, 2010.

f. While Reed and Kelly were in Kelly's room, Kristen Brundage could hear 'loud laughing and some playful-sounding screams." Exhibit "F," Statement of Kristen Brundage p. 1.

g. As Reed carried Kelly to his room, Kelly "was laughing and hitting him in the butt with a shoe." *Id*.

h. While Reed and Kelly were in Reed's room, Ms. Brundage heard "laughing screams" coming from Reed's room. *Id*.

i. "After a while, they came out wrestling. It seemed like play wrestling, with laughing and goofy insults." *Id*. at 2.

j. "Every time Reed would walk away, Kelly would chase after him, insulting him and egging him on." *Id*.

k. After R.A. Sena intervened, "Kelly stayed at Reed's door trying to call him back into the hallway." *Id*.

l. During the early morning hours of September 5, 2010, the "interaction between [Kelly] and Reed was playful." Exhibit "G," Statement of Morgan Slade p. 1.

    m.    Kelly and Reed wrestled "for a while with the same idea of slapping each other on the butt." Exhibit "H," Statement of Demitri Carahalios p. 1.

    n.    "Kelly and Reed were fairly loud [and] horseplaying, though the situation never seemed violent." Exhibit "I," Statement of Gabriela Ors p. 1.

    o.    Kelly called Reed "pussy lips." Exhibit "J," Statement of Michael Sena.

    p.    Kelly told Reed that "he could suck [her] 'Big fat black cock.'" *Id*.

    q.    Kelly asked [R.A. Sena] to "shake her hand and promise not to fill out a report" "because she had a game today." *Id*.

51.    On September 6, 2010, Officer Ulmer and Officer Middleton discussed filing charges against Reed and officially charged Reed with assault, harassment, and disorderly conduct. Bucknell Defendants' Exh. B, p. 12, item 12; *see also Id*. at p. 13, item 15; *see also* Exhibit "C" p. 69-70.

52.    On September 6, 2010, Dean Locher temporarily suspended Reed from Bucknell University. Exhibit "Q", Letter from Linda Locher to Reed Dempsey dated 9/6/10.

53. On September 7, 2010, Defendant Voci's law firm was contacted by Mr. Stefanowicz regarding the September 5, 2010 incident. Exhibit "P," Excerpts from Deposition Transcript of Anthony J. Voci Jr. p. 13:17-25, p. 14:1.

54. Defendant Voci was hired by the Stefanowiczs' "to assist them in answering their questions and facilitating the process by which they would file criminal charges." *Id*. at 14:4-6.

55. Defendant Voci told Bucknell administrators that it was "highly improper" for Bucknell University to lift Reed's suspension or to "allow Mr. Dempsey to be in any proximity, let alone close proximity to Ms. Stefanowicz...." *Id*. at 44:9-13.

56. Kelly's version of events did not comport with what the witnesses reported, and Bucknell administrators confronted her with the inconsistencies. Exhibit "S," Bromfield Dep. T. p. 120:7-20. After a meeting between the Stefanowicz family, Defendant Voci, and various Bucknell officials and BUPS supervisors, it was decided that Kelly should give another statement so she could expand her story. Exhibit "S" pp. 55:3-7,119:6-19. At the request of University officials, Kelly was re-interviewed by Detective Ettinger and Defendant Voci. Exhibit "P" p. 26:11-19; *see also* Bucknell Defendants' Exh. B, p. 16, item 26.

57. Defendant Voci stated that "the University [is] allowing the perpetrator of a sex crime to misuse the internal process to continue to victimize a student/victim." Exhibit "U" Letter from Anthony Voci to Kari Conrad of 9/21/10.

58. In a letter to Bucknell's then-in-house counsel, Wayne Bromfield, Defendant Voci made the following statements:

   a. "Bucknell University's response . . . reeks of bias and discrimination towards *a female victim of a sex crime*.";

   b. "simply to move *the offender* to another dorm 1,000 feet from the victim.";

   c. "the University then sought Kelly's approval to have her *attacker* return to campus so that he could take classes."

   d. Reed "has been permitted to file retaliatory charges against his victim, Kelly.";

   e. "[b]y proceeding as planned, you will exacerbate the harm by allowing Kelly's *attacker* direct contact with his victim..."; and

   f. "[h]ere's the unavoidable and unpleasant truth: when a male college student tries to *force* himself upon a female college student, *it's a sex crime*;". Exhibit "W", Letter from Voci to Bromfield of 9/29/10 (emphasis added).

59. In an email to Dean Conrad, Defendant Voci stated that Bucknell is forcing Kelly to "be cross-examined by her *assailant* less than a month after her

attack. Exhibit "X," Email from Voci to Kari Conrad of 9/29/10, 2:58 p.m. (emphasis added).

60. Defendant Voci publicly stated that Kelly "was told her charges against her *attacker* would be thrown out". Exhibit "Y," News Article from *The Daily Item* of 10/6/10 (emphasis added).

61. During her next interview Kelly told BUPS officers she yelled at Reed that she would not allow Reed to do what he had done [sexually assault] to Rebecca (Kelly's roommate.) Bucknell Defendants' Exh. E, p. 3.

62. After Kelly's interview, Rebecca went to public safety and told officers Reed had not assaulted her, and she provided a written statement stating "[a]nything that Kelly brings up is not relevant at all to her situation...." Exhibit "N," Statement of Rebecca Neubauer p.1.

63. Rebecca also told Officer Holtzapple that she and Reed had an intimate encounter and that "no force was used towards her." Bucknell Defendants' Exh. B, p. 14, item 20.

64. On September 10, 2010, BUPS filed the additional charges of "false imprisonment" and "indecent assault" against Reed. *Id*. at 20, item 35.

65. On September 14, 2010, Kelly filed student-conduct violations against Reed. Bucknell Defendants' Exh. V.

66. On September 15, 2010, Reed filed student-conduct violation against Kelly. Bucknell Defendants' Exh. X.

67. Reed and Attorney Becker also sought to have criminal charges filed against Kelly for her actions on September 5, 2010, but BUPS refused to even consider charges against Kelly. Exhibit "V", Affidavit of Anthony Voci.

68. Chief Friedberg was concerned about the conflict that existed between the internal investigation and the external criminal charges process, and the dual roles BUPS took in this matter. Exhibit "K," Excerpts from Deposition Transcript of Chief Jason Friedberg p. 39-40; *see also* Bucknell Defendants' Exh. p. 24, item 47.

69. Kelly refused to participate in the student conduct hearing, however, she was still allowed to pursue her claims against Reed. Kelly and Reed were found jointly "responsible" for Disorderly Conduct on October 8, 2010. Bucknell Defendants' Exh. Y.

70. Bucknell did not turn over documents to Reed that were material and relevant to the hearing, including an audio recording of Kelly's Interview, and

accurate copy of the BUPS report, interview notes/reports, and exculpatory witness statements.

71. On October 29, 2010, District Attorney Peter Johnson withdrew all charges against Reed. Bucknell Defendants' Exh. BB.

**BOYLE LITIGATION**

/s/ *Megan E. Schanbacher*
**Dennis E. Boyle, Esquire**
Supreme Court I.D. No. 49618

**Megan E. Schanbacher, Esquire**
Supreme Court I.D. No. 306958
4660 Trindle Road, Suite 102
Camp Hill, PA 17011
Phone: (717) 737-2430
Fax: (717) 737-2452
Email: deboyle@boylelitigation.com
      mschanbacher@boylelitigation.com

Counsel For: Plaintiffs

Dated: June 26, 2014

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email address(es):

| | |
|---|---|
| Amy C. Foerster, Esquire<br>amy.foerster@bucknell.edu | Mark T. Perry, Esquire<br>mtp@theperrylawfirm.com |
| Corey S. Winter, Esquire<br>cwinter@saul.com | Timothy Holland, Esquire<br>tholland@theperrylawfirm.com |
| James Keller, Esquire<br>jkeller@saul.com | |

                                      /s/ *Penny A. Rogers*
                                      Penny A. Rogers, Pa.C.P.
                                      Senior Paralegal

Dated:  June 26, 2014